903 P.2d 741

**SPRENGER, GRUBB & ASSOCIATES, INC., an Idaho corporation, Plaintiff–Appellant,**

v.

**CITY OF HAILEY, Idaho, Defendant–Respondent.**

No. 21474.

Supreme Court of Idaho, Pocatello, May 1995 Term.

Sept. 29, 1995.

Rosholt, Robertson & Tucker, Twin Falls, for appellant. Gary D. Slette argued.

J. Stephen Crabtree, Ketchum, for respondent.

SILAK, Justice

## I.

## NATURE OF THE CASE

This appeal concerns a decision by the Hailey City Council to change the zoning classification of certain land owned by appellant Sprenger, Grubb & Associates (SGA) from "Business" to "Limited Business." SGA appealed to the district court, and the district court upheld the City Council's action. SGA again appeals.

## II.

## ISSUES

A. Did the City Council's rezoning action breach the development agreement between the City and SGA's predecessor?

B. Did the City Council's rezoning action constitute a taking of property without just compensation in violation of the state and federal constitutions?

C. Should the doctrine of estoppel be applied to prevent the City Council from changing the zoning of SGA's property?

D. Was the rezoning action an invalid exercise of the police power?

E. Was SGA denied procedural due process when the mayor refused to recuse himself from participating in the zoning proceeding?

F. Did the City zoning administrator's appeal to the City Council of the decision by the Planning and Zoning Commission constitute an unlawful procedure?

G. Was the rezoning action inconsistent with the comprehensive plan of the City of Hailey and a Hailey zoning ordinance?

H. Was the rezoning action arbitrary and capricious?

## III.

## FACTS & PROCEDURAL BACKGROUND

In 1973, the City of Hailey and McCulloch Properties, Inc. (MPI), the predecessor to

SGA, entered into a development agreement which provided for the annexation of 654 acres of MPI's property into the City and the development of a "master planned residential-recreational neighborhood." The property, today known as Woodside Subdivision (Woodside), consisted of certain areas specifically designated as residential areas, and other areas designated for business development. The subject of this appeal is 12.6 acres within Woodside, which had been classified as a Business District from 1973 until 1993, when the Hailey City Council adopted Hailey City Ordinance No. 623, rezoning the 12.6 acres to a Limited Business District. The 12.6 acres is completely surrounded by property zoned and developed as General Residential and is one and a half miles south of Hailey's downtown business area.

The MPI–Hailey development agreement set forth certain fees and obligations for MPI, ranging from cash contributions, to building a recreation center and a sewage treatment facility. Hailey has acknowledged that MPI fulfilled its obligations under the development agreement. Hailey's obligations under the agreement included the annexation and zoning of the Woodside property, along with other action to aid in the development of Woodside. Paragraph 9 of the development agreement provided that the agreement "shall inure to the benefit of and be binding upon HAILEY and upon MPI and upon its successors and assigns."

Since 1973, Hailey has grown and developed, including substantial development in various portions of Woodside. In 1977, MPI sold its interest in Woodside to SGA. SGA supported various favorable rezoning changes throughout Woodside from 1978 to 1989. In June 1991, the Hailey City Council annexed other properties located next to Hailey's downtown business area, and these properties were also classified as "Business District."

In 1990, Hailey's Mayor R. Keith Roark supported "downzoning" the 12.6 acres in Woodside based upon the property's distance from the "downtown business core." In July, 1990, the Hailey City Council amended its comprehensive plan, defining the existing business core as a discrete area demarcated by certain city streets within Hailey. The ordinance further prescribed that expansions of the Business and Limited Business Districts were to occur around the "existing core," as defined. The Hailey Planning and Zoning Commission (Zoning Commission) was requested to "downzone" the property in question from Business District to General Residential District in 1990 and again in 1992, and the Zoning Commission denied both requests. Later in 1992, Mayor Roark directed the City Planning and Zoning Administrator to request the Zoning Commission to rezone the 12.6 acres from Business to Limited Business District. Again, the Zoning Commission denied the request. The Zoning Commission decided that the existing Business District classification conformed to the City's comprehensive plan, and that the proposed zone change to Limited Business did not conform to the comprehensive plan.

The City Planning and Zoning Administrator appealed the Zoning Commission's decision to disallow the rezoning request. This appeal was heard by the Hailey City Council in July 1993, in conjunction with a public hearing. The public comment at the hearing was overwhelmingly in favor of rezoning the 12.6 acres in Woodside. At the hearing, SGA requested Mayor Roark to recuse himself from being the presiding officer on the basis of his alleged lack of impartiality. Mayor Roark denied that request. However, Mayor Roark did not vote at the July 1993 hearing because three City Council members were present, and it would be unnecessary for him to cast a tie-breaking vote.

At the conclusion of the hearing, the three attending Hailey City Council members unanimously voted to reverse the Zoning Commission's decision, and thus, to rezone (or downzone) the 12.6 acres in Woodside to Limited Business. Subsequently, in August 1993, the City Council issued its written Findings of Fact and Conclusions of Law, relative to its prior verbal decision rendered after the hearing. In its conclusions of law, the City Council concluded among other things that "the existence of a large retail commercial property outside the Hailey Business Core, as defined in the Hailey Comprehensive Plan, is not in accordance with the

current Hailey Comprehensive Plan, adopted in 1983." The rezoning decision ultimately became effective on September 13, 1993, as incorporated in Hailey City Ordinance No. 623. In October 1993, SGA filed its Petition for Review in the district court to appeal the rezoning decision of the City Council. The district court upheld the City Council's action, and SGA again appeals.

## IV.

### STANDARD OF REVIEW

■ The Administrative Procedures Act provides the general standards for judicial review of an administrative decision, such as the City Council's rezoning determination. I.C. § 67–5279. This Court does not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. I.C. § 67–5279(1). We will affirm the agency action unless the agency's findings or decisions: (a) violate statutory or constitutional provisions; (b) exceed the agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence; or (e) are arbitrary, capricious, or an abuse of discretion. I.C. § 67–5279(3).

More specifically, we summarized the applicable standard of review in a zoning case such as this in *City of Lewiston v. Knieriem*, 107 Idaho 80, 83, 685 P.2d 821, 824 (1984):

The zoning power is not unlimited; the power to zone derives from the police power of the state, and zoning ordinances must therefore bear a reasonable relation to goals properly pursued by the state through its police power. A strong presumption exists in favor of the validity of local zoning ordinances. The burden of proving that the ordinance is invalid rests upon the party challenging its validity and the presumption in favor of validity can be overcome only by a clear showing that the ordinance as applied is confiscatory, arbitrary, unreasonable and capricious. Where there is a basis for a reasonable difference of opinion, or if the validity of legislative classification for zoning purposes is debatable, a court may not substitute its judgment for that of the local zoning authority.

(citations omitted). This Court reviews an agency's decision independently of the district court's appellate decision. *Dovel v. Dobson*, 122 Idaho 59, 61, 831 P.2d 527, 529 (1992). Additional standards of review are discussed below as appropriate for the particular issues raised by SGA.

## V.

### ANALYSIS

#### A. DEVELOPMENT AGREEMENT

SGA argues that the development agreement between the City and MPI was a binding contract, wherein the City agreed to a regulatory freeze, or to zone consistent with MPI's development plan. SGA contends the rezoning is a breach of the development agreement.

■ We have reviewed the provisions of the development agreement which SGA cites in support of its argument, and do not believe the development agreement created the claimed regulatory freeze. Paragraph 4(a) of the development agreement says generally that Hailey shall "take all other action as may be required by MPI to develop the annexed real property in accordance with the terms and provisions of the MPI Master Plan and this agreement." Paragraph 8, under the heading "Interpretation of Agreement" provides that "[i]t is understood that the development of the annexed real property in accordance with the terms of this Agreement and exhibits attached hereto shall be in substantial compliance with the MPI Master Plan...." At most, these provisions seem to indicate the City's general agreement that the development will move forward in "substantial compliance" with the MPI Master Plan. At issue, therefore, is whether the City's rezoning action is *not* in substantial compliance with the MPI Master Plan.

We have reviewed the MPI Master Plan, which was attached as Exhibit A to the development agreement. The primary features of the planned 650 acre development included approximately 418 acres for residential lots, 22 acres of neighborhood parks, an 18–acre

school site, and a 9-acre tennis club/recreation facility. About 32% of the gross area was to be open space, parks, greenbelts, and recreation areas. (Master Plan p. 5)

However, the MPI Master Plan also speaks of "[a]dequate commercial areas to serve the daily needs of the project's inhabitants." (MPI Master Plan p. 6) It mentions "[n]eighborhood convenience shopping locations designed to serve local residents within 'walking distance' to minimize needless vehicle traffic." (Master Plan p. 6) The "central commercial area" was located so as to "minimize pedestrians crossing a major street when walking from shop to shop." (Master Plan p. 7)

■ We conclude that the MPI Master Plan did envision a comparatively small commercial area for some "convenience shopping locations" for the "project's inhabitants." However, the MPI Master Plan did not foretell a major retail shopping center, such as a "K-Mart" or "Shopko." We believe that the Woodside development may proceed in "substantial compliance" with the MPI Master Plan despite Hailey's rezoning of the central commercial area to a Limited Business zone. Permitted uses within the Limited Business zone include: motels, boarding houses, professional offices, hospitals, medical clinics, daycare facilities, personal service establishments, churches, schools, and recreation facilities. (Hailey Ordinance No. 532, Section 4.5.2). Moreover, the Limited Business zone allows other "conditional uses" upon receipt of a conditional use permit, which include: convenience stores, service stations, pharmacies and medical supply stores, indoor restaurants, electrical and plumbing contractors, and garden supply nurseries. (Hailey Ordinance No. 532, Section 4.5.3) With such uses allowed in Woodside's central commercial area, we believe the development may proceed in substantial compliance with the MPI Master Plan. We do not find in either the development agreement or the MPI Master Plan any explicit language amounting to a "regulatory freeze" or an agreement for permanent zoning. Hence, we reject SGA's contention that Hailey breached the development agreement.

Having found no breach of a "regulatory freeze" or permanent zoning obligation in the development agreement, we need not decide whether such a provision could even be enforced against a City Council exercising its police powers many years later. *See Idaho Falls v. Grimmett,* 63 Idaho 90, 97, 117 P.2d 461, 464 (1941) (police power of a municipality cannot be bartered away even by express contract).

## B. CONSTITUTIONAL VIOLATIONS

■ SGA makes various constitutional arguments on appeal to this Court, some of which were not raised below. Among other things, SGA contends the rezoning violates the contracts clause in Article I, § 10 of the United States Constitution, and that the rezoning is retroactive legislation forbidden under *Landgraf v. USI Film Prods.,* —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). We decline to address these issues because SGA failed to raise them before the district court, and they are not addressed in its appellate opinion.

The district court did address SGA's contention that the rezoning constitutes an unlawful taking of property under the Fifth and Fourteenth Amendments. There seems to be no dispute that the rezoning has diminished the value of SGA's property. In a staff report, the Hailey city planner estimated the property would be worth approximately $800,000 less when zoned Limited Business ($3.3 million reduced to $2.5 million). It can be plausibly argued that the rezoning deprives SGA of the highest and best use of its land.

■ However, "[o]nce again, we hold that a property owner has no vested interest in the highest and best use of his land, in the solely monetary sense of that term." *Dawson Enters., Inc. v. Blaine County,* 98 Idaho 506, 519, 567 P.2d 1257, 1270 (1977), *overruled on other grounds by Cooper v. Board of County Comm'rs of Ada County,* 101 Idaho 407, 411, 614 P.2d 947, 951 (1980). This Court has repeatedly declared that a zoning ordinance which downgrades the economic value of property does not constitute a taking of property in violation of the United States Constitution, where some residual value re-

mains in the property. *Daley v. Blaine County,* 108 Idaho 614, 617, 701 P.2d 234, 237 (1985); *Intermountain West, Inc. v. Boise City,* 111 Idaho 878, 880, 728 P.2d 767, 769 (1986); *County of Ada v. Henry,* 105 Idaho 263, 266, 668 P.2d 994, 997 (1983).

■ The rezoning from Business to Limited Business places further restrictions on SGA's use and enjoyment of the land, but not so much as to constitute a taking. The permitted and conditional uses allowed in the Limited Business zone still provide SGA with adequate options for commercial enterprises.

> " '... In considering this point the distinction must be made between zoning regulations which merely restrict the enjoyment and use of property through a lawful exercise of the police power, and a taking of property for a public use, for which compensation must be paid. In the former instance, where the owner of property is merely restricted in the use and enjoyment of his property, he is not entitled to compensation.' "

*Dawson,* 98 Idaho at 519, 567 P.2d at 1270 (*quoting Roark v. City of Caldwell,* 87 Idaho 557, 564–65, 394 P.2d 641, 645 (1964) (other citations omitted)).

■ SGA contends that a regulation can be a taking if it "interferes with distinct investment-backed expectations," *citing Penn Cent. Transp. Co. v. New York City,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). However, United States Supreme Court decisions sustaining land use regulations which are reasonably related to the promotion of the general welfare "uniformly reject the proposition that diminution in property value, standing alone, can establish a 'taking.'" *Penn Cent.,* 438 U.S. at 132, 98 S.Ct. at 2663 (citations omitted). Moreover "[t]he inquiry into whether a taking has occurred is essentially an 'ad hoc, factual' inquiry," and a regulation's "interference with reasonable investment-backed expectations" is but one of several factors that should be considered. *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1011, 104 S.Ct. 2862, 2877, 81 L.Ed.2d 815 (1984) (citations omitted). We have considered SGA's claimed investment-backed expectations, as more fully discussed in section V.C. below. SGA also cites *Dolan v. City of Tigard,* —— U.S. ——, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994) for the proposition that a compensable taking can occur even though the property owner has not been denied all economically viable use of the property. *Dolan* is distinguishable. It involved the reasonableness of conditions exacted on a property owner before the community would grant a building permit. One condition required the owner to dedicate a portion of his property for public use as a bicycle/pedestrian pathway. The United States Supreme Court's holding required the lower court to make a finding as to "proportionality" between the exactions required and the projected impact of the proposed development. Here, there have been no exactions, nor a taking of all uses for any portion of the subject property.

We hold that the rezoning of SGA's property from Business to Limited Business constitutes no taking of property without just compensation, as prohibited under the United States and Idaho Constitutions.

## C. ESTOPPEL

SGA claims the doctrine of estoppel should be applied in this case to prevent the City Council from breaching the 1973 development agreement, after having received the benefits of the agreement. The record reveals that in 1976, the Mayor of Hailey acknowledged that pursuant to the development agreement as amended, MPI had among other things: (1) constructed three indoor and seven outdoor tennis courts; (2) constructed a large heated swimming pool and a clubhouse building; (3) contributed $82,000 to the City for the construction of a fire station, a sewer cross-over line, and to pay for off-site engineering studies; (4) donated approximately 20 acres of land for the construction of a new high school, and paved a road to the site; (5) provided a water production system to supply water for the new high school and the existing Woodside development; and (6) constructed a sewage treatment plant. SGA contends that these, along with other expenses, resulted in substantial expenditures by MPI and SGA in reliance upon the terms of the development agreement. Now that the City has received

the benefit of its bargain, it should be estopped from changing its position as to its obligations under the development agreement, SGA contends.

This Court had occasion to consider the applicability of estoppel against a municipality in a zoning context in *Harrell v. City of Lewiston*, 95 Idaho 243, 506 P.2d 470 (1973). In *Harrell*, we held that "[i]n the exercise of its police power, which includes the enactment and enforcement of zoning regulations, a municipality acts in a governmental capacity." *Id.* at 248, 506 P.2d at 475. We further stated that "[a]lthough a municipality may be estopped in limited circumstances, the enactment of zoning regulations is a governmental function which is not usually subject to estoppel." *Id.* at 247, 506 P.2d at 474. We determined in *Harrell* that no exigent reasons existed in that case for the application of estoppel without deciding what extraordinary circumstances may merit the application of the doctrine of estoppel in future cases. As in *Harrell*, we again determine that no exigent circumstances exist in this case to apply estoppel against the City in the exercise of its police power.

■ Initially, we note that the city violated no express "regulatory freeze" or permanent zoning provision in the development agreement, as discussed above in section V.A. Secondly, neither MPI nor SGA ever established commercial enterprises on the 12.6 acres in reliance on the Business classification. The 12.6 acres, now zoned Limited Business, remain undeveloped to date. Thirdly, as the district court concluded, SGA has not demonstrated that the many improvements described above were performed in good faith reliance on the Business classification of the 12.6 acres. SGA has shown no detrimental reliance upon the existence of the Business classification of the 12.6 acres, as opposed to a Limited Business classification. Due to the size of this development and its primary features, such as approximately 418 acres for residential lots, 22 acres of neighborhood parks, an 18-acre school site, and a 9-acre tennis club/recreation facility, we believe the improvements described above would likely have occurred even if the 12.6 acres had been originally zoned Limited

Business. Accordingly, we hold that the doctrine of estoppel does not preclude the rezoning of the 12.6 acres to Limited Business.

## D. VALIDITY OF EXERCISE OF POLICE POWERS

SGA claims the rezoning action was an invalid exercise of police powers to protect downtown merchants from retail competition. SGA contends the City Council members had protectionist motives, and sought to regulate competition. One Council member stated at the hearing that allowing business zones in the periphery of our city "pulls the rug out from under those businesses who have invested their hearts and their wallets in our downtown." SGA contends that a desire to prevent competition for the benefit of Hailey's downtown merchants is not a proper application of zoning law and police power principles.

■ "The zoning power is not unlimited; the power to zone derives from the police power of the state, and zoning ordinances must therefore bear a reasonable relation to goals properly pursued by the state through its police power." *City of Lewiston v. Knieriem,* 107 Idaho at 83, 685 P.2d at 824. Assuming *arguendo,* as SGA contends, that protecting downtown merchants from competition is not a goal that may be "properly pursued" by the City through its police power, the record indicates other legitimate purposes supporting the rezoning.

In its findings of fact and conclusions of law entered August 9, 1993, the City Council articulated various reasons for its decision to rezone the property. Finding of fact number 6 cites to the Hailey Comprehensive Plan, which states that the Business and Limited Business Districts are to be expanded around the existing business core. Likewise, finding number 12 states that the Hailey Comprehensive Plan requires the City Council to encourage a central business core that will be conducive to economic growth and will contain a concentration of community services, shopping, entertainment and cultural facilities so as to optimize the use of the existing infrastructure and decrease dependency on automobiles. Finding number 14 refers to a statement by the Hailey Police Chief that the

Hailey Police Department does not currently have the law enforcement personnel necessary to patrol two business districts within the City of Hailey. Finding of fact number 15 says the overwhelming weight of public comment was that the existence of a large business zone located nearly two miles from the central core of the City was extremely detrimental to the welfare of the public and the integrity of the community. The Council's Conclusions of Law state that "the existence of a large retail commercial property outside the Hailey Business Core ... is not in accordance with the current Hailey Comprehensive Plan, adopted in 1983," and "... will create excessive additional requirements at public cost for public facilities and services." The district court found the rezoning action was also based on a mistake in the original zoning classification, and changed circumstances.

 Determining *where* particular business uses shall be allowed to expand in a community is normally an appropriate exercise of the police power. Preserving aesthetic values and the economic viability of a community's downtown business core can be a proper zoning purpose. Moreover, SGA's protection from competition argument is defective because nothing in the rezoning ordinance prevents new retail, restaurant, and entertainment businesses from locating in or around the City's downtown core and competing with existing businesses. On this record, we cannot agree with SGA that the *only* reason for the rezoning was to protect downtown merchants from competition. "Where there is a basis for a reasonable difference of opinion, or if the validity of legislative classification for zoning purposes is debatable, a court may not substitute its judgment for that of the local zoning authority." *City of Lewiston v. Knieriem,* 107 Idaho at 83, 685 P.2d at 824. We hold that the rezoning ordinance bears a reasonable relation to

goals properly pursued by the City through its police power.

### E. PROCEDURAL DUE PROCESS

SGA contends Mayor Roark's refusal to recuse himself from the hearing at SGA's request constitutes a violation of due process and amounts to reversible error. The mayor presided over the proceedings and asked questions of the hearing's participants. Roark declined to recuse himself, however, because three council members were present, and the mayor's vote would be required only in the event of a tie. SGA contends Roark's bias was well known and his failure to recuse himself tainted the proceeding.[1]

 I.C. § 67–6506 prohibits a member of a governing board or commission, who has "an economic interest in the procedure or action," from participating in a zoning proceeding. Such a member is prohibited from participating even if he or she will not vote. *Manookian v. Blaine County,* 112 Idaho 697, 735 P.2d 1008 (1987). SGA has not alleged Mayor Roark had an immediate or direct economic conflict of interest. Thus, he was not required to recuse himself under I.C. § 67–6506 or *Manookian.*

 Nevertheless, SGA contends the transcript of the hearing "discloses the amount of Roark's participation in the hearing and his influence on the members of the City Council." The transcript of the hearing reveals that there was overwhelming public sentiment in favor of the downzone. During the public comment portion of the proceeding, at least twenty-nine people expressed views in favor of the rezoning, compared to three or four who were against it. One individual told the Council that she circulated petitions supporting the downzone and in one week had approximately 1,200 signatures. The Council members referred to numerous letters and petitions they had received supporting the downzone. The Council mem-

1. On appeal to the district court, SGA argued that city councilman John Carson should have disqualified himself from the hearing due to his alleged economic interest bias. The district court rejected this contention because no immediate economic effect upon Mr. Carson's interest had been shown. On appeal to this Court, SGA

made no argument, either in its briefs or at oral argument, regarding Mr. Carson's alleged bias. Accordingly, we do not address this issue. *Grand Canyon Dories, Inc. v. Idaho State Tax Comm'n,* 121 Idaho 515, 517, 826 P.2d 476, 478 (1992).

bers also expressed their individual views on the matter. They relied on provisions of Hailey's comprehensive plan which, according to their interpretation, detailed the need to protect the existing downtown core and to provide that growth occurred from the downtown core outward. The City Council voted unanimously to rezone the property. On our review of the record, we cannot say that Mayor Roark's participation constituted a violation of due process.

## F. UNLAWFUL PROCEDURE

After the Hailey Zoning Commission denied the request of the City Planning and Zoning Administrator to rezone the 12.6 acres to Limited Business, the Administrator appealed the Zoning Commission's decision to the Hailey City Council, which heard the appeal as part of a public hearing in July 1993. SGA asserts generally that the Administrator's appeal from the Zoning Commission to the City Council constituted unlawful procedure.

 The City Council found no procedural irregularities in the appeal, stating in finding number 4 of its Findings and Conclusions: "Section 3.5 of the Hailey Zoning Ordinance states that any interested party may appeal any final decision of the Commission to the Council by filing an appeal with the Hailey City Clerk within 15 days from the date of decision." The district court concluded that the City Zoning Administrator was an "interested party" under the ordinance entitled to initiate an appeal to the City Council. We also perceive no unlawful procedure in the appeal by the City Zoning Administrator. See, e.g., City of Burley v. McCaslin Lumber Co., 107 Idaho 906, 693 P.2d 1108 (Ct.App.1984) (city had standing to appeal decision of its own zoning board to district court).

## G. STATUTORY VIOLATION

 SGA contends the rezoning violated statutory provisions by being inconsistent with both the City's comprehensive plan and zoning ordinance. Preliminarily, we note our standard of review for this issue.

[T]he question of whether a zoning ordinance is 'in accordance' with the Compre-

hensive Plan is a question of fact. Thus, a governing body charged to zone 'in accordance' with its comprehensive plan pursuant to I.C. § 67–6511 must make a factual inquiry to determine whether the requested zoning ordinance or amendment reflects the goals of, and takes into account those factors in, the comprehensive plan in light of the later present factual circumstances surrounding the request.

\* \* \* \* \* \*

... Whether a zoning ordinance is 'in accordance' with the comprehensive plan is a *factual question,* which can only be overturned where the fact found is *clearly erroneous.*

Love v. Board of County Comm'rs of Bingham County, 108 Idaho 728, 730–31, 701 P.2d 1293, 1295–96 (1985) (emphasis original), quoting Bone v. City of Lewiston, 107 Idaho 844, 693 P.2d 1046 (1984). A zoning ordinance need not strictly conform to the land use designation of a comprehensive plan. Balser v. Kootenai County Bd. of Comm'rs, 110 Idaho 37, 39, 714 P.2d 6, 8 (1986).

 SGA first contends the rezoning of the 12.6 acres contravenes a 1990 amendment to the Hailey comprehensive plan which provides that "Business and Limited Business Districts are to be expanded around the existing core." SGA claims the Council went against the amendment, because it expanded the Limited Business classification in an area not "around the existing core" as defined in Hailey's ordinances. SGA's argument might carry more weight if the 12.6 acres was initially zoned for residential or agricultural uses, and then rezoned for Business or Limited Business. Such action might be inconsistent with the comprehensive plan. Here, the effect of the rezoning ordinance is to limit retail and entertainment uses in an outlying area. This is consistent with encouraging such uses around the central core. The Council's conclusion that the "downzoning" of the 12.6 acres to Limited Business is consistent with Hailey's comprehensive plan is not clearly erroneous, and is affirmed.

SGA next contends that according to Hailey ordinance no. 532, the Limited Business District "is intended to be a transition zone

between residential and business areas." The rezoning action is inconsistent with this ordinance because there is no Business-zoned property from which the new Limited Business district could serve as a transition, SGA contends.

■ The provision of the ordinance upon which SGA relies provides as follows:

4.5.1 Purpose.

The purpose of the LB District is to provide areas for a wide range of residential uses, restricted business uses, and medical facilities. The LB District is intended to be a transition zone between residential and business areas.

We do not read this general provision as dictating that the Limited Business district can *only* exist when situated precisely between a Business and a Residential zone. Indeed, there may be good reasons to allow a Limited Business district even though not adjacent to a Business district. Schools, churches, medical facilities, and nursing homes are just some of the permitted uses in a Limited Business district which a planning board may wish to allow even though there is no nearby Business district.

We hold that the factual finding of the City Council, that the rezoning of the 12.6 acres is not inconsistent with section 4.5 of Hailey ordinance 532, is not clearly erroneous and is therefore affirmed.

## H. ARBITRARY OR CAPRICIOUS

SGA claims the City Council acted arbitrarily and capriciously in rezoning the 12.6 acres in light of other zoning decisions.

■ A presumption of validity is accorded to the decisions of a municipal zoning board. *Cole–Collister Fire Protection Dist. v. City of Boise,* 93 Idaho 558, 563, 468 P.2d 290, 295 (1970). The burden of proof is placed upon the party attacking the zoning decision to show that the zoning ordinance, as applied to the property in question, was confiscatory, arbitrary, unreasonable and void. *Id., citing Boise City v. Better Homes, Inc.,* 72 Idaho 441, 447, 243 P.2d 303, 306 (1952). If the presumption is overcome, by evidence tending to show that the ordinance in question has been unreasonably applied to

the property, the burden then shifts to the city to come forward with evidence to rebut and show that the ordinance was valid. *Cole–Collister,* 93 Idaho at 563, 468 P.2d at 295.

As the district court determined, SGA met its initial burden by citing three other Business designated properties outside the Hailey City core: (1) an "upzone" of the Power Engineers and Southwood Storage property which is located even further from the downtown business core than the subject property; (2) the annexation and Business-zoning of land at the north end of Hailey, known as the Rinker annexation, which was previously in the unincorporated limits of Blaine County, and not part of the delineated Hailey downtown Business core; and (3) the annexation and Business-zoning of land at the north end of Hailey, known as the Northwest annexation which was previously in the unincorporated limits of Blaine County, and not part of the delineated Hailey downtown Business core.

■ After SGA met its initial burden of proof, the City of Hailey responded asserting that all three actions were consistent with the comprehensive plan, and specifically, with the City's goal to expand the retail business uses around the downtown core, while avoiding the expansion of large retail businesses in outlying areas of the city. Hailey's response was summarized by the district court as follows:

The rezoning of Power Engineers was adopted by the city because it posed no threats to the city since it was an engineering rather than a retail firm and, further, it would add employment opportunities to the area. The Rinker annexation was property lying close to the downtown area, which had been zoned commercial by Blaine County. By annexing these lots, the City of Hailey was able to gain control over the property's development, through the use of deed restrictions, restricting grocery stores, hardware stores and other retailers, with variances to be allowed only after the city's consideration and approval. Finally, the Northwest annexation involved property lying adjacent to the existing

Hailey downtown business core. The annexation would square up the city boundaries; and, by annexing the property, which already had businesses on it (also zoned commercial by the county), the city hoped to gain some control over how this property, so close to its downtown area, would be developed.

We hold that the record supports the City's response that its actions were decided in accordance with its comprehensive plan. Accordingly, we conclude that the rezoning of the 12.6 acres was not arbitrary or capricious.

We have considered the remaining issues SGA has raised on appeal, and conclude that SGA's contentions do not constitute an appropriate basis to overturn the City Council's rezoning decision. Specifically, we have considered and rejected SGA's arguments that there was insufficient evidence on the record as a whole to support the rezoning action, and that SGA was denied due process by the City's failure to provide a transcribable verbatim record of the proceedings before the City Council.

## VI.

### CONCLUSION

The decision by the Hailey City Council to rezone the 12.6 acres to Limited Business, as pronounced in its findings of Fact and Conclusions of Law dated August 9, 1993, and the City's passage of Hailey City Ordinance No. 623 on September 13, 1993, is affirmed. We conclude that the rezoning decision: (1) did not breach the development agreement between the City and SGA's predecessor; (2) does not constitute a taking of property without just compensation; (3) is not barred under the doctrine of estoppel; (4) was not an invalid exercise of the police power; (5) did not deny SGA procedural due process; (6) was not the result of an unlawful procedure; (7) was not inconsistent with the City's comprehensive plan and zoning ordinances; (8) was not arbitrary and capricious; (9) was supported by substantial evidence on the record as a whole; and (10) that SGA was not denied due process through a failure to provide a transcribable verbatim record. We

decline to address SGA's contentions that the rezoning violates the contracts clause in Article I, § 10 of the U.S. Constitution, and that the rezoning is retroactive legislation forbidden under *Landgraf v. USI Film Prods.,* —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), because SGA did not raise these issues below.

No attorney fees or costs on appeal.

McDEVITT, C.J., and JOHNSON, TROUT and SCHROEDER, JJ., concur.