942 P.2d 557

**Mary COMER; Jeff Comer; Jack Goodman and Mary Goodman, Petitioners–Appellants,**

v.

**The COUNTY OF TWIN FALLS, a political subdivision of the State of Idaho; The Twin Falls County Board of Commissioners; Dale Gerratt and Becky Gerratt; Citizen'S Enterprises, Inc., an Idaho corporation, Respondents.**

No. 23045.

Supreme Court of Idaho, Twin Falls, March 1997 Term.

July 24, 1997.

as I.C. § 72–102(17)(b).

434

Benoit, Alexander, Sinclair, Harwood & High, L.L.P., Twin Falls, for plaintiffs–appellants. J. Walter Sinclair argued.

Rosholt, Robertson & Tucker, Twin Falls, for respondents Dale and Becky Gerratt. Gary D. Slette argued.

Alexander C. Yewer, Boise, for respondent Twin Falls County Board of Commissioners.

Felton & Felton, Buhl, for respondent Citizen's Enterprises, Inc.

SILAK, Justice.

## I.

### NATURE OF THE CASE

This is an appeal from a district court decision affirming a decision by the Twin Falls County Board of Commissioners (the Board). The Twin Falls County Planning and Zoning Commission (Commission) refused to allow Dale and Becky Gerratt (the Gerratts) to further divide three parcels of their land. The Gerratts appealed to the Board, which reversed the Commission's decision. Mary and Jeff Comer (the Comers) and Jack and Mary Goodman (the Goodmans) appealed to the district court, which affirmed the Board.

## II.

### FACTS AND PROCEDURAL BACKGROUND

The property which the Gerratts sought to divide is zoned agricultural, although the Board found that "[t]he site is partially surrounded by other approximately five acre sized parcels containing single-family dwellings." The parcels were originally part of a single 40–acre parcel owned by Cal Green (Green), who divided the property into pie-shaped parcels. Currently, 15 acres (three parcels: four acres, five acres, and six acres, respectively) are owned by the Gerratts, 10 acres (two parcels) by Mark and Jerry VanEldren (the VanEldrens) and 15 acres (three parcels) by the Comers. There is currently one home on the 40 acres.

The Gerratts filed a Conditional Use/Land Division Application with the Commission for each of their three parcels, and planned to divide each parcel in half. The Gerratts wished to divide the parcels because the area was marginal farm ground and the parcels too small to farm.

The Gerratt's argued the following in favor of the splits:

1. parcels were already approved for three homes;

2. split was consistent with the county's comprehensive plan to cluster homes;

3. the property was shallow, rocky, and not good farm land;

4. the land irrigated poorly;

5. two parcels were conditionally sold;

6. there was a demand for country housing;

7. it would be easier to sell the smaller parcels;

8. larger parcels create weed problems;

9. past county policy was supportive of those splits; and

10. property covenants say that it shall be used for residential purposes.

The appellants argued the following in opposition:

1. Goodman's well goes dry every spring and he was concerned about more wells drawing on the water table;

2. since the land was difficult to irrigate, splitting it up would make it difficult to keep it green;

3. potential problems with sewage on shallow rocky land;

4. possibility of insufficient water for irrigation;

5. potential problems with access to the splits;

6. the property was at the end of the Buhl airport, and Goodman had concerns about additional homes;

7. Goodman had cattle at the edge of this property, and was concerned about his ability to continue to feed his cattle if the Applications were approved; and

8. Comer disagreed that the land was poor agriculturally, and noted that there were cattle operations and dairies in the area.

In a 4–4 tie vote, the Commission denied the Applications. The Gerratts appealed to the Board, which held a hearing on August 14, 1995. A notice of the hearing, dated August 1, 1995, was sent to Jim Barker (Barker) (the Gerratts realtor), the Comers, the Goodmans, and Dix Hudson. The Appellants note that no notice of the August 14 hearing was mailed to Jerry VanEldren and they emphasize that VanEldren did not know about the subsequent meeting on August 21. However, VanEldren is not a party to the appeal.

The Board, the clerk, someone with the Twin Falls County Prosecutor's office, a representative from the County and the Commission, Mary Comer, Jack Goodman, the VanEldrens, and agents for the Gerratts were present at the August 14 hearing. At the conclusion of the hearing, the following exchange took place:

Mr. Maughan: Mr. Chair I'd like to table [ ] any decision on this until we can hear the tape reviewed from the original [ ] Planning and Zoning hearing. I'm curious to hear what we haven't heard. Since we're basing it on that evidence I'd like to hear more of it and then consider the evidence as presented and then set a date one week from today at 10:00 o'clock to make our final determination.

Mr. Hempleman: I second that.

Mr. Reinke: We have motion and second.

Male person: I just have one question [ ] do you have enough time to listen to the tape and look things over to make a final decision in a week or . . . ?

Mr. Reinke: I think so.

Male person: Just want to make sure. . . .

Mr. Reinke: Let's we'[ve] got to go out to the transfer station anyway let's stop by there. Motion has been made and seconded any further discussion on that particular motion. Hearing none then the date will be a week from today at 10:00 a.m.

Mr. Hempleman: The 21st.

Mr. Reinke: August 21st. . . .

Mr. Reinke: [ ] shall we call for a vote. All those in favor of this motion should signify by saying I [sic].

All Commissioners: I [sic].

Mr. Reinke: It's unanimous we'll meet again here at 10:00 next Monday morning.

The Board did not give any written notice to the parties of the August 21 proceeding, although the Gerratts, Comers, and VanEldrens were present at the August 14 hearing. However, only the Board, Doug Howard, Lee Taylor (from the Planning and Zoning Commission) and Barker were present at the August 21 meeting. The Board rendered its decision approving the permits at the August 21 meeting, and discussed with Barker the conditions that would be attached to the permit. The Comers and Goodmans then appealed to the district court, which affirmed the Board's decision. The Comers and Goodmans now appeal to this Court.

## III.

### ISSUES ON APPEAL

The issues on appeal are:

1. Whether the Conditional Use/Land Division Application was the proper proce-

dure to be used in dividing these parcels, which were in an area zoned agricultural and were the product of a previous land division.

2. Whether the appellants were denied due process by the Board when the Board:

   a. Did not notify the parties in writing of the August 21 meeting; and

   b. Viewed the property in question without notice, without the presence of any of the parties, and without making a record.

3. Whether the Board's decision to grant the conditional use permit was supported by substantial evidence on the record as a whole.

4. Whether the parties are entitled to attorney fees on appeal.

## IV.

### STANDARD OF REVIEW

The Appellants first argue that there is some question regarding the standard of review for a local zoning authority decision. We note at the outset that contrary to the requirements of I.A.R. 35(a)(4), the Appellants did not list this as an issue on appeal. However, "this Court has indicated that this rule might be relaxed where the issue was addressed by authorities cited or arguments contained in the briefs." *State v. Prestwich*, 116 Idaho 959, 961, 783 P.2d 298, 300 (1989) (partially overruled on other grounds by *State v. Guzman*, 122 Idaho 981, 842 P.2d 660 (1992)). The Appellants and Respondents in this case did fully brief this issue, including authority and arguments. Therefore, we will address the issue.

■ The Appellants argue that the definition of "agency" in Idaho Code section 67–5201, the opening section to the Idaho Administrative Procedures Act (I.A.P.A.)[1],

1. Idaho Code section 67–5201(2) states that: "Agency" means each state board, commission, department or officer authorized by law to make rules or to determine contested cases, but does not include the legislative or judicial

branches, executive officers listed in section 1, article IV of the constitution of the state of Idaho in the exercise of powers derived directly and exclusively from the constitution, the state militia or the state board of correction.

leads to the conclusion that the I.A.P.A. applies only to *state* administrative decisions, not local. They further argue that because the definition of "agency" in I.R.C.P. 84[2] differs, the only explanation is that the legislature did not intend county proceedings to come under the I.A.P.A.

However, this Court recently decided a case involving the denial of a conditional use permit, after I.R.C.P. 84 became effective. In that case, we clearly stated:

> In a case such as this, the Idaho Supreme Court reviews the record independently of the district court's appellate decision. Nonetheless, this Court's review is limited to a determination whether the zoning authority's findings and conclusions are supported by substantial, competent evidence. In addition, there is a strong presumption of validity favoring the actions of zoning authorities when applying and interpreting their own zoning ordinances.

*Howard v. Canyon County Bd. of Comm'rs,* 128 Idaho 479, 480, 915 P.2d 709, 710 (1996) (citations omitted). *See also Sprenger, Grubb & Assoc. v. City of Hailey,* 127 Idaho 576, 580, 903 P.2d 741, 745 (1995). Pursuant to I.C. § 67–5279(2), we affirm an agency's decision unless it: (a) violates constitutional or statutory provisions; (b) is in excess of the agency's statutory authority; (c) is made upon unlawful procedure; or (d) is arbitrary, capricious, or an abuse of discretion. *Sprenger,* 127 Idaho at 580, 903 P.2d at 745.

Finally, contrary to the Appellants' assertions, there is no conflict between I.R.C.P. 84 and the I.A.P.A. I.R.C.P. 84 only sets forth procedures relating to review of agency decisions. Unlike the I.A.P.A., it does not set forth a standard of review. In addition, I.R.C.P. 84(u) specifically provides that "[t]he scope of judicial review on petition from an agency to the district court shall be as provided by law." Therefore, there is no conflict, and I.A.P.A. governs review of local zoning decisions.

2. Idaho Rule of Civil Procedure 84(a)(2)(B) defines "agency" as "any board, commission, department, or officer for which statute provides

## V.

## ANALYSIS

### A. The Conditional Use/Land Division Application Was The Proper Procedure To Be Used To Subdivide The Parcels In Question.

The Gerratts filed three Conditional Use/ Land Division Applications, one for each parcel of property they were seeking to divide in half. As noted above in Section I of this opinion, the parcels in question were originally part of one single 40–acre tract, which had been divided by a previous owner into eight five-acre parcels. The Gerratts currently own three parcels, the Comers own three, and the VanEldrens own two. The Appellants argue that since the previous owner had already divided the property, the additional division sought by the Gerratts must be done under the Subdivision Ordinance (Ordinance 17), not the Review Committee or Conditional Uses Ordinance (Ordinance 21, Article 10).

■ The division by the original owner took place approximately 20 years before 1995, or approximately 1975. Ordinance 21 was not passed until 1979, and contains a grandfather clause which states that "[t]he enactment of this ordinance shall not terminate or otherwise affect rights, variances and permits acquired or authorized for work that is actively in progress under the provisions of the ordinance hereby repealed." Twin Falls County Ord. 21, art. 1–8. The Appellants argue that the clause should be read in such a way that the only rights, variances or permits which are covered by that grandfather clause are those for which work was actively in progress at the time the ordinance was passed. However, if that interpretation were correct, hundreds if not thousands of rights and variances which existed prior to the passage of Ordinance 21 would suddenly be subject to challenge. A more sensible construction, and the one we hold is correct, is that the phrase "acquired or authorized for work that is actively in progress" modifies permits only. Therefore, if a property own-

for the district court's judicial review of the agency's action."

er already had (1) a right or (2) a variance or (3) a permit that had already been acquired or authorized for work already in progress, the property owner would not be subject to the new ordinance. The Gerratts own three parcels of property, all of which were in existence before and thus unaffected by the passage of Ordinance 21. Therefore, the divisions sought by the Gerratts are the first divisions of each parcel of property.

Other clear language in Ordinances 17 and 21 leads us to the conclusion that the Conditional Use/Land Division Application was the proper one to use in this case. Ordinance 21, art. 10 provides that the purpose of a conditional use application

> is to consider a usage largely suitable for the respective zone but possessing characteristics such as to require review and appraisal by the Review Committee of the Planning and Zoning Commission.... *A Conditional Use/Land Division provides for the one (1) time division of property, and is not to be confused with a subdivision (two or more divisions of the same parcel of property).*

Ordinance 21, art. 7–16 defines a subdivision as "[t]he result of an act of dividing an original lot, tract or parcel of land into *more than two (2) parts* for the purpose of transfer of ownership or development, ..." (emphasis added). Ordinance 17, art. 2.26 contains an identical definition.

Thus, the requirements of Ordinance 17 would apply if the parcels in question were not being divided for the first time, or if they were being divided into more than two parts for the transfer of ownership or development. However, as we have already held, each of the parcels in question was in existence before Ordinance 21 was enacted, and each is being split for the first time. Therefore, we hold that the Conditional Use/Land Division Application was the proper one to use in seeking permission to split the parcels in question.

**B. The Twin Falls County Board Of Commissioners Did Not Violate The Appellants' Procedural Due Process Rights By Holding The Second Meeting Without Written Notice.**

■ The Appellants argue that the Board violated the Appellants' procedural due process rights when it held the second meeting on August 21 without providing written notice to the Appellants. In support of this argument, the Appellants cite two cases in which this Court held that notice and specific findings of fact, among other things, are requirements of procedural due process in local zoning cases. *Cooper v. Bd. of County Comm'rs. of Ada County,* 101 Idaho 407, 411, 614 P.2d 947, 951 (1980); *Chambers v. Kootenai County Bd. of Comm'rs.,* 125 Idaho 115, 867 P.2d 989 (1994). In *Cooper,* we held that the appellants' procedural due process rights were violated when the board did not provide written notice of its second meeting, did not file a transcribable verbatim record of the meetings, and did not make specific written findings of fact and conclusions of law. *Id.* at 411, 614 P.2d at 951. At the first meeting in *Cooper,* the Board did not set a specific date for the second meeting during the first meeting. Instead, the Board "deferred its decision until a later time." *Id.* at 408, 614 P.2d at 948. Further, during the second meeting, members of the planning and zoning staff "spoke against granting the requested rezone and presented information concerning overcrowding in the [ ] School District. No transcribable record was kept of any of the proceedings." *Id.*

After a careful review of the transcript of the hearings in this case, we are convinced that the case before us is distinguishable from *Cooper.* First, the Board clearly set a date, time, and place for the second meeting at the end of the first meeting. The Appellants have argued that even though the transcript shows that they were present at the beginning of the August 14 meeting, nothing in the record proves that they were present at the end. However, the Appellants have not stated that they were not in attendance at the end of the meeting, and nothing in the record proves that they were not. All they have been able to offer is mere theoretical possibilities, which are not sufficient.

Second, no new evidence was taken at the August 21 meeting. Instead, each Board member stated his position on the matter. It is obvious from the transcript that the Board

had already decided to approve the permits, with certain conditions attached. While there was some discussion between the Board and Barker, that discussion was merely to clarify for the Gerratts the conditions that would be imposed on their permits. Thus, the purpose of the second meeting was not to hear additional argument or take additional evidence, but merely to render the Board's decision.

Therefore, because a definite date, time, and place were set for the second meeting at the end of the first meeting, at which the Appellants were present, and because the second meeting was not an evidentiary hearing, the procedural due process rights of the Appellants were not violated when they were not sent written notice of the second meeting.

### C. The Twin Falls County Board Of Commissioners Violated The Appellants' Due Process Rights When They Viewed The Property In Question Without Notice And Without Giving The Parties Or Their Representatives The Opportunity To Be Present.

■ Between August 14 and August 21, the Board viewed the property in question. However, they provided no written notice of the viewing, and provided none of the parties with the opportunity to be present. The Appellants argue that this was a violation of their procedural due process rights, because the Board was taking new evidence without notice and without the opportunity for them to be present. The Respondents argue that viewing the property was not new evidence, because the Commission had viewed a videotape of the property, and the viewing was simply a "live" version of the videotape.

■ In reviewing a Commission decision, the Board must confine itself to the Commission's record. *See Chambers*, 125 Idaho at 118, 867 P.2d at 992. In this case, it is arguable that the Board did not confine itself to the Commission's record, since the Board viewed the property, while the Commission did not. However, even if the Commission had viewed the property, the procedural due process rights of the Appellants would still have been violated in this particular situation.

The property viewing in this case is analogous to a viewing in a trial. We have held that a judge or jury may not view premises without notice to the parties. *Highbarger v. Thornock*, 94 Idaho 829, 831, 498 P.2d 1302, 1304 (1972). In that case, we noted the reasons for requiring notice of the viewing:

> First, notice to the parties provides them with an opportunity to contest the propriety of such a viewing under the particular circumstances.... More importantly, notice to the parties provides them with an opportunity to be present at the time of the inspection, which in turn will insure that the court does not mistakenly view the wrong object or premises.

*Id.* The *Highbarger* Court noted that the appellants in that case had no way of knowing if the judge viewed the proper area, or took note of the relevant features of the premises in question. *Id.* at 831–32, 498 P.2d at 1304–05.

Similarly, in this situation, the record indicates that one of the protestants to the application (not a party to this appeal) actually suggested that the Board go look at the property. However, this does not constitute the proper notice, and the fact remains that the parties were not given the opportunity to be present. Because none of the parties was present during the viewing, and because no record was made of the viewing, the parties have no way of knowing if the correct parcels of property were examined by members of the Board. Therefore, we hold that before a local zoning body, whether it be the Commission or the Board, views a parcel of property in question, it must provide notice and the opportunity to be present to the parties.

We vacate the Board's decision and remand this case for further proceedings consistent with this opinion. Because we are taking that action, we do not reach the remaining issues in the appeal.

## VI.

## CONCLUSION

We hold that the three Conditional Use/ Land Use Applications filed in this case were

the proper applications to use in seeking a permit to divide each of three parcels. We also hold that the Board did not violate the Appellants' procedural due process rights by holding the second meeting without written notice. However, we further hold that the Board violated the Appellants' procedural due process rights when they viewed the property without notice, and without giving the parties or their representatives the right to be present. Therefore, we vacate the Board's decision, and remand for further proceedings consistent with this opinion.

Affirmed in part, vacated in part, and remanded. No attorney fees or costs are awarded.

TROUT, C.J., and JOHNSON, McDEVITT and SCHROEDER, JJ., concur.