48 P.3d 1266

CANAL/NORCREST/COLUMBUS ACTION COMMITTEE, an unincorporated group of affected persons, Petitioner–Appellant,

v.

CITY OF BOISE, an Idaho municipal corporation, acting through the Boise City Council, Respondent,

and

Neighborhood Housing Services, Inc., Intervenor–Respondent.

Canal/Norcrest/Columbus Action Committee, an unincorporated group of affected persons, Petitioner–Appellant,

v.

City of Boise, an Idaho municipal corporation, acting through the Boise City Council, Respondent.

Nos. 27302, 28257.

Supreme Court of Idaho, Boise, February 2002 Term.

June 6, 2002.

Matt J. Howard, Boise, for appellant.

Randall S. Grove, for respondent.

Spink Butler Clapp, LLP, for intervenor-respondent. Michael T. Spink argued.

TROUT, Chief Justice.

## I. NATURE OF THE CASE

This is an appeal from a district judge's order affirming the grant of a land-use development project by Boise City ("the City"). We affirm.

## II. FACTUAL AND PROCEDURAL HISTORY

On September 29, 1998, Intervenor/Respondent Neighboring Housing Services, Inc. ("NHS"), which is a developer, filed an application for a conditional use permit ("CUP") with variances for setbacks, CUP98–0123, to develop a mobile home park housing development at 2340 West Victory Road in Boise, Idaho. On November 9, 1998, the City Planning and Zoning Commission ("Commission") held a hearing on the application, and approved the application on the same day, followed thereafter by written findings of fact and conclusions of law. Appellant Canal/Norcrest/Columbus Action Committee ("CNC"), consisting of neighboring residents, challenged the approval in an appeal to the City Council ("Council").

On February 2, 1999, the Council commenced a hearing on the matter, and prior to taking public testimony determined that the ordinance in effect at the time required a planned unit development ("PUD") for development of a mobile home park, rather than a CUP. Thus, on February 16, 1999, NHS filed CUP99–0016 seeking approval of the mobile home park as a PUD. CUP99–0016 is very similar in substance to CUP98–0123, except that it contains an additional one half acre of open space on the east side of the property. The Planning Director, Wayne Gibbs, waived the filing fee for CUP99–0016.

On March 8, 1999, the Commission held a hearing on CUP99–0016, and approved the application at the conclusion of the hearing. The Commission's approval was based on the amended mobile home park provisions of Boise City Ordinance No. 5894, approved February 9, 1999, and effective February 15, 1999. CNC appealed the Commission's decision to the Council on March 8, 1999. The Council conducted a hearing on the matter on April 13, 1999, and denied the appeal at the conclusion of the hearing, issuing a written decision on April 20, 1999, with findings of fact and conclusions of law. The Council concluded that the Commission erred in applying the provisions of Ordinance No. 5894 to CUP99–0016, stating instead that the ordinance in effect on September 29, 1998, at the time NHS filed its original application, applied to CUP99–0016. The Council, however, determined that the Commission's approval of CUP99–0016 was appropriate, even under the former ordinance.

On May 11, 1999, CNC filed in the district court a petition for judicial review of the Council's approval of CUP99–0016. On January 25, 2001, the district judge entered his

memorandum opinion and order affirming all actions of the Council approving CUP99–0016. CNC filed its appeal of the district judge's order which is the subject of the present appeal.[1]

## III. STANDARD OF REVIEW

■ "The Idaho Administrative Procedures Act [(I.A.P.A.)] governs the review of local zoning decisions." *Price v. Payette County Bd. of County Comm'rs*, 131 Idaho 426, 429, 958 P.2d 583, 586 (1998) (citing *Comer v. County of Twin Falls*, 130 Idaho 433, 437, 942 P.2d 557, 561 (1997)). In an appeal from the decision of a district court acting in its appellate capacity under the I.A.P.A., this Court reviews the agency record independently of the district court's decision. *Id.* (citations omitted); *Howard v. Canyon County Bd. of Comm'rs*, 128 Idaho 479, 480, 915 P.2d 709, 710 (1996) (citation omitted). Additionally, there is a strong presumption of validity of the actions of zoning boards, which includes the application and interpretation of their own zoning ordinances. *Howard*, 128 Idaho at 480, 915 P.2d at 711.

■ This Court does not substitute its judgment for that of the agency as to the weight of the evidence presented. I.C. § 67–5279(1). Rather, this Court defers to the agency's findings of fact unless they are clearly erroneous. *Price*, 131 Idaho at 429, 958 P.2d at 586 (citing *Castaneda v. Brighton Corp.*, 130 Idaho 923, 926, 950 P.2d 1262, 1265 (1998)) (citing *South Fork Coalition v. Board of Comm'rs of Bonneville County*, 117 Idaho 857, 860, 792 P.2d 882, 885 (1990)). "In other words, the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial competent evidence in the record." *Id.*

The Board's zoning decision may only be overturned where its findings: (a) violate statutory or constitutional provisions; (b) exceed the agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence in the rec-

ord; or (e) are arbitrary, capricious, or an abuse of discretion. *Id.* (citing I.C. § 67–5279(3)). The party attacking the Board's decision must first show that the Board erred in a manner specified in Idaho Code § 67–5279(3), and then it must show that its substantial right has been prejudiced. *Id.* (citing *Angstman v. City of Boise*, 128 Idaho 575, 578, 917 P.2d 409, 412 (Ct.App.1996)).

## IV. ANALYSIS

### A. Ordinance No. 5894 does not apply to the present dispute.

■ In Idaho "an applicant's rights are determined by the ordinance in existence at the time of filing an application for the permit." *Payette River Property Owner's Ass'n v. Board of Comm'rs of Valley County*, 132 Idaho 551, 555, 976 P.2d 477, 481 (1999) (citing *South Fork Coalition v. Board of Comm'rs*, 117 Idaho 857, 860–61, 792 P.2d 882 885–86 (1990)). The reason the ordinance in effect at the time of filing the application is the one that applies is "that to permit retroactive application of an ordinance would allow a zoning authority to change or enact a zoning law merely to defeat an application, which would result in giving immediate effect to a future or proposed zoning ordinance before that ordinance was properly enacted." *Payette River*, 132 Idaho at 555, 976 P.2d at 481 (citing *South Fork Coalition*, 117 Idaho at 861, 792 P.2d at 886).

■ In the present case, the Council voted to approve the Mobile Home Ordinance, No. 5894 effective February 15, 1999. CNC argues that CUP99–0016, which was filed on February 16, 1999, was a separate application and that Ordinance No. 5894 controls the present appeal.

Conversely, the City argues that CUP99–0016 was a continuation of CUP98–0123, filed on September 29, 1998, and thus the ordinance in effect at the time of the original application controls. The City also points out that Boise City Code, § 11–03–02 requires that an application be on "a prescribed

---

1. There were other hearings and proceedings not relevant to the present appeal, including a previous appeal to this Court. In 2001 Opinion 106, we held that this case was ripe for judicial review, but we did not rule on the substantive merits of the case.

form, accompanied by the appropriate filing fee." CUP98–0123 was submitted on a form provided by the City, along with a filing fee of $1030.00, and qualifies as an application. CUP99–0016, on the other hand, covers essentially the same development as CUP98–0123, and even cross-references the same. In addition, the filing fee for CUP99–0016 was waived by the City, indicating treatment of the submission as a single application.

The City Council, in its February 2, 1999, meeting found in reference to CUP98–0123 that "we haven't got the proper application in front of us," and thus the Council remanded to the Commission for consideration as a planned unit development. Further, Councilman Wetherell, prior to making the motion to remand stated, "if my viewpoint prevails [regarding the remand], that doesn't mean that this is over. That means that this gets remanded to the Planning & Zoning Commission. The Planning & Zoning Commission will be directed to consider this as a planned unit development." The Council considered the second submission a continuation of the initial application, not a separate application, and there is substantial evidence in the record to support its conclusion.

CNC also cites *Foster v. City of St. Anthony*, 122 Idaho 883, 841 P.2d 413 (1992) in support of its position that CUP99–0016 was a separate application, so that Ordinance No. 5894 is controlling. In *Foster*, the City of St. Anthony leased an unused hospital to the State of Idaho for use as a correctional facility. The State had applied for a special use permit to allow the use of the hospital, which was approved by the city. The special use permit was challenged, and on judicial review, the district court held that the city had violated procedural requirements in issuing the permit, and it remanded to the city for further proceedings.

In *Foster*, the city's planning and zoning commission, and the city council held hearings to consider whether to amend the city's land use ordinance and comprehensive plan to provide for public service districts and allowed the planning and zoning commission to rezone as a public service district any area deemed to be of local or state importance. Following these amendments, the state withdrew its application for a special use permit and applied for a building permit that would authorize the repair of the hospital's roof. The planning and zoning commission approved the permit. On appeal, this Court held that because the building permit was not applied for until after the new ordinance and comprehensive plan were in effect, it was properly evaluated under the new ordinance and comprehensive plan.

The present dispute, however, varies from *Foster*. In *Foster*, unlike in the present action, the applicant withdrew its prior application before submitting its "second" application. Thus, we hold that the Council's treatment of CUP 98–0123 and CUP 99–0016 as a single application in the present dispute was not clearly erroneous, and we affirm that conclusion on appeal. Therefore, Ordinance No. 5894 does not apply to the disputed application, but rather the ordinance in effect on September 29, 1998, the date CUP98–0123 was filed is controlling.

**B. The zoning requirements regarding setbacks and buffers were properly waived as a PUD.**

■ Regarding PUDs, the applicable ordinance provides:

**Section 11–06–05.01. Justification**

A planned development is a parcel of land which is planned and developed as a unit under single ownership or control, containing one or more uses, buildings and common open space or recreational facilities.

The planned development process provides an opportunity for land development that preserves natural features, allows efficient provision of services, and provides common open spaces or other amenities not found in traditional lot-by-lot development. The process also provides for the consistent application of conditions of approval for the various phases of a planned development. Every planned development requires a conditional use application, and shall be subject to all conditional use procedures.

CNC argues the last sentence of this section requires that any modification to a PUD meet the variance requirements set forth in the ordinance. Conversely, the City points to § 11–06–5.03, which provides in part:

A. Changes from the development standards of the underlying zone may be approved.

. . .

F. Required setbacks: Attached structures may be permitted in planned developments.

Along the periphery of planned developments, yards shall be provided as required by the regulations of the district in which the development is located unless the Commission provides an exception as provided for in Section 11–6–5.3. Where development already exists at the periphery, the yards shall, where practical be matched. For example, side yards should be provided adjacent to side yards, rear yards adjacent to rear yards, and front yards opposite to front yards.

The City argues these provisions mean changes can be approved for a PUD application without following the variance criteria utilized with conditional use applications.

■ We find the City's interpretation persuasive because the last sentence of section 11–06–5.01 only requires PUD applications to follow conditional use *procedures*. Thus, a PUD is not required to meet the variance requirements, which are substantive rather than procedural. The very purpose of a PUD is to allow for flexibility in planning, which would be inhibited if the developer were required to meet the rigid variance requirements set forth in the ordinance. We further hold that the City properly waived the setbacks as a part of the PUD process.

**C. The City did not violate the Enabling Act.**

■ CNC also argues that Idaho Code § 67–6516, which requires a variance for setbacks, applies to Idaho Code § 67–6515, the PUD statute. It argues that PUDs are not specifically exempted from the variance requirement, and that the legislature passed the statutes at the same time, thus reasoning that PUDs are required to conform to the variance criteria for deviations.

Conversely, the City points out that § 67–6515 provides that planned unit permit procedures can be defined by local ordinance "[a]s part of or separate from the zoning ordinance." It also notes that Idaho Code § 67–6518 provides that "[s]tandards may be provided as part of zoning, subdivision, planned unit development, or separate ordinance adopted, in accordance with notice and hearing procedures provided in section 67–6509, Idaho Code."

The City reasons that these code sections indicate a planned unit development is separate from the zoning ordinance, and if it is included in the local zoning ordinance as in the present case, it is for convenience only. It thus concludes that because § 67–6516 (the variance section) only requires variances "as part of the zoning ordinance," this section does not apply to PUDs and a PUD application is not required to meet the variance criteria.

Again, the City's interpretation is persuasive. If a PUD procedure can be set up separately from the local zoning ordinance, and the variance section only applies to zoning ordinances, it is possible for the local ordinances to be set up in such a manner that they could exclude variance requirements from the PUD process. Therefore, the Idaho Code sections discussed above do not require the variance criteria be satisfied for PUDs.

**D. CNC is not entitled to attorney's fees and costs on appeal under I.C. § 12–117.**

CNC asserts it is entitled to attorney's fees and costs on appeal pursuant to Idaho Code § 12–117. That section permits an award of fees to a person who prevails against a state agency if a court determines the agency "acted without a reasonable basis in fact or law."

Because we affirm the district judge's ruling in favor of the City, CNC is not entitled to attorney's fees.

## V. CONCLUSION

We hold that the ordinance in effect when CUP 98–0123 was filed controls the case at bar. We further hold that under that ordinance, the City acted properly and we affirm the trial court. We award costs on appeal to respondents as the prevailing parties.

Justices SCHROEDER, WALTERS, KIDWELL and EISMANN concur.