572 P.2d 892

**BOISE CITY, a Municipal Corporation, Plaintiff-Appellant,**

v.

**Albert E. BLASER and Intermountain West, Inc., an Idaho Corporation, Defendants-Respondents.**

No. 12094.

Supreme Court of Idaho.

Dec. 28, 1977.

Hugh Mossman, Acting City Atty., Boise, for plaintiff-appellant.

Jon N. Wyman of Kraft, Wyman & Lutz, Boise, for defendants-respondents.

BISTLINE, Justice.

In October, 1973, Intermountain West, Inc., a closely held corporation directed by Ken Marema, purchased the subject property as the site for a 44–unit condominium project to be called Casa Del Ray. An Ada

County conditional use permit was obtained and an engineering firm was engaged to survey the land and plan the water, sewage and drainage. In the spring of 1974, condominium financing became difficult and the developers decided to switch to a 56-unit apartment complex (Sunflower Apts.) and applied to Ada County for a zoning certificate, which they received on September 24, 1974. (The parties have stipulated that a county zoning certificate is, for the purposes of this appeal, the equivalent of a Boise City unconditional building permit.)

In November or December of 1974, Intermountain West ceased efforts to perform grading and excavation because their equipment was repeatedly stuck in the mud due to unusually inclement weather. On December 16, 1974, the City of Boise, which had been studying the possible annexation of this property throughout 1973 and 1974, concluded formal annexation proceedings. The Marema group negotiated a stock purchase agreement transferring ownership in Intermountain West, Inc., to the Blaser group on February 28, 1975.

In March, 1975, a neighbor noticed an Intermountain West work crew beginning excavation and immediately notified the city. The city investigated, found that no city building permit had been obtained and posted a stop work order. In May-June, 1975, work again commenced without a permit and another stop work order was issued. When the order was ignored, Boise filed a complaint on June 19, 1975, seeking an injunction and order to show cause why an injunction should not issue. On July 3, 1975, Judge Hagan granted a status quo temporary injunction barring further construction at the site on the grounds that a building permit had not been obtained as required by Boise City Ordinance No. 2856, Sec. 301(a). An order to this effect issued on July 30, 1975.

A hearing on the question of whether a permanent injunction should issue was held before Judge Marion Callister on August 14 and 21, 1975. At the close of the hearing, Judge Callister ruled in favor of Intermountain West, basing his ruling on two alternative grounds, namely, (1) that this Court's ruling in *Ben Lomond, Inc. v. City of Idaho Falls*, 92 Idaho 595, 448 P.2d 209 (1968), required him to hold that the receipt of a county zoning certificate vests in its holder the right to build, regardless of subsequent annexation and rezoning by the City and regardless of a showing of substantial reliance; and (2) that Intermountain had acquired a vested right through substantial reliance on the county zoning certificate. The trial court's judgment, which was filed on October 9, 1975, enjoined the City of Boise from issuing any further stop work orders or otherwise interfering with Intermountain's right to build the project without obtaining a city building permit (though it provided that the project must comply with the Boise City Building Code). Boise City appeals. We affirm on the basis of the second reason stated by the trial court.

I.

The trial court's first ruling was the enunciation of a *per se* rule based upon its reading of the *Ben Lomond* case. In that case, property which was annexed by the city of Idaho Falls on October 18, 1962, was left unzoned until August 22, 1963, when the city adopted a restrictive zoning ordinance. In the interim, the property owner applied for a building permit on several occasions; a building permit was refused or no action was taken at all—despite the fact that the proposed uses were allowed under the ordinance then in effect. This court ruled that

At least in those cases like the present one, in which no zoning ordinance was pending at the time an application for a building permit is filed, it is our opinion that an applicant is entitled to a building permit upon compliance with the then existing ordinance. 92 Idaho at 601, 448 P.2d at 215.

The present case is quite different. *Ben Lomond* was a one-jurisdiction case: both the permit application and the attempted rezoning took place within the jurisdiction of the city *after* the date of annexation. Here, by contrast, the application and the grant of the certificate took place in the county, but the later rezoning took place as a result of and contemporary with the city's annexation. Generally speaking, to give effect to a county permit within city limits would be to violate the separate sovereignty provisions of Idaho Const., art. 12, § 2, and the careful avoidance of any county/city jurisdictional conflict or overlap which is safeguarded therein. *See, Hess Distributing Co. v. Bonneville County,* 69 Idaho 505, 210 P.2d 798 (1949). Such a result would not follow from *Ben Lomond* which stated explicitly that,

> . . . the county zoning ordinance ceased to apply once the land in question was removed from the county's jurisdiction by annexation. The land was from that time subject to the city's jurisdiction . . . .. 92 Idaho at 559, 448 P.2d at 213.

As Judge Hagan noted in his memorandum decision dealing with the temporary injunction, the true relevance of *Ben Lomond* for the present set of facts is that "a county cannot bind a municipality by regulatory decisions taken by the county affecting the property prior to annexation by the municipality." *See,* 2 Yokley, Zoning Law and Practice § 19–13 (3d ed. Cum.Supp. 1976). We therefore decline respondents' invitation to create a *per se* rule whereby every holder of a county zoning certificate has a vested right to build, regardless of subsequent annexation and rezoning by a city and regardless of a showing of substantial reliance.

## II.

When a zoning ordinance is enacted, it cannot outlaw previously existing non-conforming uses. *Cole-Collister Fire Protection Dist. v. City of Boise,* 93 Idaho 558, 468 P.2d 290 (1970); *O'Connor v. City of Moscow,* 69 Idaho 37, 202 P.2d 401 (1949). Similarly, when a city, by annexation, enacts a new zoning ordinance to govern what was previously county land, it must respect existing non-conforming uses. *Boise City v. Better Homes, Inc.,* 72 Idaho 441, 243 P.2d 303 (1952). The non-conforming use must, however, be one which already exists, not one which is merely contemplated. *Estes v. City of Moscow,* 96 Idaho 922, 539 P.2d 275 (1975); *Boise City v. Better Homes, Inc., supra.* Such is the balance which is struck between private property rights on the one hand, and, on the other, the right of a municipality to exercise its police power by enacting a zoning ordinance in behalf of the general welfare. 8 McQuillin, Municipal Corporations, § 25–46 (rev.ed. 1976). It follows that the correct rule governing post-annexation conflicts between property owners possessed of building permits and the zoning ordinances of the annexing city is:

> . . . while a landowner who merely obtains a building permit is not protected against a future zoning change, he will be protected if, in reliance on the permit or on the existing zoning, he has made substantial expenditures or otherwise committed himself, to his substantial disadvantage, before the zoning is changed. Annot., 49 A.L.R.3d 13, 20 (1973).

The trial court found, in the present case, that Intermountain West made substantial expenditures in good faith reliance on the county zoning permit (which the city concedes is the equivalent of its own unconditional permit to build). The court found that this closely held corporation had no other business except this project, that it had expended sizable sums on surveying, engineering, architectural and planning services and that it had begun grading and foundation work which, but for the unseasonably bad weather in the fall of 1974, would have been completed at the time of annexation on December 16, 1974.

The trial court also found that, "The loss to the corporation and its stockholders will be substantial if the stop-work order is upheld."[1] Applying the well-known rule to this case, findings which are supported by the record will not be disturbed on appeal. The judgment of the trial court is affirmed. Costs to respondents.

McFADDEN, C. J., DONALDSON and SHEPARD, JJ., and DUNLAP, D. J. (ret.), concur.

1. Appellant City of Boise urges the Court to adopt a "proportionate expenditures" rule in determining the issue of "substantiality." According to such a rule, substantiality must be measured by comparing the total expenditures with the cost of completing the project. We conclude that respondent states the better rule, namely, that the "proportionate test" should not be dispositive of the substantial reliance issue, but should be only one of the factors considered in its determination. *Clackamas County v. Holmes*, 265 Or. 193, 508 P.2d 190 (1973).