# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 34106

| | | |
|---|---|---|
| ED TERRAZAS and JACKIE WESELOH, | ) | |
| | ) | Boise, June 2008 Term |
| Petitioners-Appellants, | ) | |
| | ) | 2009 Opinion No. 58 |
| v. | ) | |
| | ) | Filed: April 15, 2009 |
| BLAINE COUNTY, IDAHO, by and through | ) | |
| its duly elected Board of Commissioners, | ) | Stephen Kenyon, Clerk |
| | ) | |
| Respondent. | ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Blaine County. Honorable Robert J. Elgee, District Judge.

The decision of the district court is affirmed.

Robertson & Slette, PLLC, Twin Falls, for appellants. Gary Slette argued.

Blaine County Prosecutor's Office, Hailey, for respondent. Timothy Graves argued.

_____

HORTON, Justice

This appeal arises from a petition for judicial review concerning a county board's denial of a subdivision application. Appellants Ed Terrazas and Jackie Weseloh (Applicants) appeal the district court's order affirming Respondent Blaine County Board of County Commissioners' (Board) decision denying Applicants' subdivision application. We affirm the decision of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Applicants are co-owners of approximately 115 acres of real property on East Fork Road, 1.5 miles east of State Highway 75 in Blaine County, Idaho. In May of 2004, Applicants submitted an application to subdivide the subject property into the NoKaOi subdivision.

Because the proposed subdivision involved no more than four lots, the application was initially processed under the short plat subdivision procedures found in section 10-4-6 of the Blaine County Code (B.C.C.). The short plat procedures are a streamlined version of the

1

standard subdivision application procedures. One of the unique features of the short plat procedure is that it allows an application to proceed directly to the Board for a final plat review without requiring a preliminary plat review by the Planning and Zoning Commission (Commission).

As part of the initial review of the NoKaOi application, Planning and Zoning Senior Planner Tom Bergin prepared a staff report for the Board's consideration. One of the issues addressed in Bergin's report was whether the areas of disturbance in the proposed subdivision fell within the Mountain Overlay District (MOD). Stated broadly, the intent of the MOD is to direct development away from the County's hillsides and mountains. B.C.C. §§ 9-21-1(A); 9-21-1(B). Bergin's first staff report concluded that the proposed areas of disturbance did not conflict with the MOD ordinance because they were located on a "bench slope" rather than a "hillside slope." Bergin's report also observed that his conclusion regarding MOD compliance was "of course subject to further examination by the Board." Applicants also claim that Planning and Zoning Administrator Linda Haavik advised them that she also believed that the planned building sites were not within the MOD because they were situated on a bench. Applicants maintain that they proceeded with their application – spending more than $50,000 in the process – in reliance on these opinions that the NoKaOi development plans did not violate the MOD ordinance.

On December 20, 2004, the Board conducted a public hearing on the proposed subdivision. Concerns as to whether the subdivision violated the MOD ordinance were raised. At the hearing, Bergin and Haavik reiterated their opinions that the areas of disturbance were not located within the MOD. Commissioner Wright commented that he had personally visited the site and found application of the MOD ordinance difficult. The hearing concluded with the Board's determination that, although the short-plat application process does not ordinarily require so, a thorough review by the Commission was appropriate to "further consider" the application.

The Commission considered the application and conducted public hearings on March 24, 2005, and April 14, 2005. At these hearings, the Commission considered Bergin's opinion regarding whether the MOD applied to the NoKaOi subdivision. As part of its review, the Commission conducted a scheduled site visit to view the property. At the Commission's request, Applicants staked and marked certain points on the property with storey poles. Following the

site visit, the Commission rejected Bergin's interpretation and application of the MOD ordinance. The Commission found that the areas of disturbance on two of the four lots in the proposed subdivision impermissibly encroached upon the MOD and also violated the county ordinance restricting development on hillsides visible from Scenic Corridor 1 (SC1) (i.e., visible from State Highway 75). Specifically, the Commission concluded that the proposed areas of disturbance were located on a "ridge of a hillside slope" and not a "bench slope." The Commission recommended that the Board deny the subdivision application.

The Board revisited the application in public hearings on June 28, 2005, and July 26, 2005. At the latter hearing, the Board voted to deny the application. The Board adopted the Findings of Fact, Conclusions of Law, and Recommendation of the Commission and, on August 18, 2005, the Board issued its own Findings of Fact, Conclusions of Law, and Decision denying Applicants' subdivision application. In its written decision, the Board specifically rejected the proposition that the MOD contained a "bench exception." The Board's written decision contained a lengthy explanation why its interpretation of the MOD ordinance, as applied to the NoKaOi subdivision application, was consistent with the Board's previous decisions involving other applications potentially involving application of the MOD ordinance.

Pursuant to the Local Land Use Planning Act (LLUPA) and the Idaho Administrative Procedures Act (APA), Applicants petitioned the district court for judicial review of the Board's denial of their subdivision application. The district court affirmed the decision of the Board. Applicants then timely appealed to this Court.

## II. STANDARD OF REVIEW

A county board of commissioners is not a state agency for purposes of the application of the APA in its totality. *Petersen v. Franklin County*, 130 Idaho 176, 182, 938 P.2d 1214, 1220 (1997) (citing I.C. § 67-5201(2)). In order to obtain judicial review under LLUPA, I.C. §§ 67-6501 *et seq.*, there must be a statute granting the right of judicial review. *Highlands Dev. Corp. v. City of Boise*, 145 Idaho 958, 960-61, 188 P.3d 900, 902-03 (2008) (citing *Gibson v. Ada County Sheriff's Dept.*, 139 Idaho 5, 8, 72 P.3d 845, 848 (2003)). Idaho Code § 67-6519(4) provides that "[a]n applicant denied a permit or aggrieved by a decision" may seek judicial review after exhausting all remedies available under county ordinances. The decision regarding a subdivision application is a decision granting a permit, I.C. § 67-6513, and is therefore subject to judicial review. *Johnson v. Blaine County,* 2009 WL 540695, at *2 (Mar. 5, 2009).

3

When an appeal is taken from the decision of the district court sitting in its appellate capacity under the APA, this Court reviews the Board's decision independently of the decision of the district court. *Evans v. Bd. of Comm'rs of Cassia County*, 137 Idaho 428, 430-31, 50 P.3d 443, 445-46 (2002); *Price v. Payette County Bd. of County Comm'rs*, 131 Idaho 426, 429, 958 P.2d 583, 586 (1998).

This Court does not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. I.C. § 67-5279(1). Rather, this Court defers to the agency's findings of fact unless they are clearly erroneous. *Castaneda v. Brighton Corp.*, 130 Idaho 923, 926, 950 P.2d 1262, 1265 (1998) (citing *South Fork Coal. v. Bd. of Comm'rs of Bonneville County*, 117 Idaho 857, 860, 792 P.2d 882, 885 (1990)). "In other words, the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial competent evidence in the record." *Price*, 131 Idaho at 429, 958 P.2d at 586. Although interpretation of an ordinance is a question of law over which this Court exercises free review, *Lane Ranch P'ship v. City of Sun Valley*, 145 Idaho 87, 89, 175 P.3d 776, 778 (2007), "there is a strong presumption of favoring the validity of the actions of zoning boards, which includes the application and interpretation of their own zoning ordinances." *Payette River Prop. Owners Ass'n v. Bd. of Comm'rs of Valley County*, 132 Idaho 551, 554, 976 P.2d 477, 480 (1999) (citing *Howard v. Canyon County Bd. of Comm'rs*, 128 Idaho 479, 480, 915 P.2d 709, 710 (1996)).

### III. ANALYSIS

This Court will only overturn the Board's decision if we find that the Board's decision: (a) violated statutory or constitutional provisions; (b) exceeded the Board's statutory authority; (c) was made upon unlawful procedure; (d) was not supported by substantial evidence in the record; or (e) was arbitrary, capricious, or an abuse of discretion. I.C. § 67-5279(3); *Price*, 131 Idaho at 429, 958 P.2d at 586. Additionally, the Applicants must show that the decision prejudiced a substantial right. I.C. § 67-5279(4); *Price*, 131 Idaho at 429, 958 P.2d at 586. As the right to develop one's property is a substantial right, *Lane Ranch P'ship*, 145 Idaho at 91, 175 P.3d at 780, our focus will be on Applicants' claims of error.

Before the district court, Applicants argued: (1) the Administrator had final authority to make MOD boundary determinations; (2) because of Applicants' reliance on the Planning and Zoning staff's opinions, the Board is estopped from applying the MOD ordinance; (3)

4

Applicants' due process rights were violated by reason of Commissioner Wright's personal visit to the site; (4) the MOD ordinance is unconstitutionally vague; (5) the Board's determination was arbitrary, capricious, and without a reasonable basis in law or fact and violated Applicants' equal protection rights; and (6) Applicants were entitled to attorney fees. The district court was not persuaded by Applicants' arguments and affirmed the Board's decision to deny the application.

On appeal, Applicants have presented the same arguments for this Court's consideration. We conclude that Applicants have failed to demonstrate a substantial error upon which this Court should overturn the decision of the Board. Thus, we affirm the decision of the district court.

**A. Applicants have failed to establish that the Board's decision violated statutory or constitutional provisions or exceeded its statutory authority.**

Applicants argue that the Board exceeded its authority by reaching a decision on MOD compliance different than that of the Planning and Zoning Administrator. Further, Applicants assert that the Board should be estopped from denying their application on the basis of the MOD, given their reliance on the opinions of Bergin and Haavik that the location of their proposed building sites was not within the MOD. We disagree.

1. The Board had the sole authority to make final decisions on subdivision applications.

The Board was empowered to enact ordinances regulating the procedure and standards for subdivision applications. I.C. § 67-6513. Under Idaho law, county boards are vested with the exclusive, non-delegable, authority to finally approve subdivision applications. I.C. § 67-6504; *Cowan v. Bd. of Comm'rs of Fremont County*, 143 Idaho 501, 511-12, 148 P.3d 1247, 1257-58 (2006). Under I.C. § 67-6511, the Board had the power to establish zoning ordinances providing standards to regulate the construction and location of buildings and the preservation of open space. This Court has recognized that aesthetic concerns, including the preservation of open space and the maintenance of the rural character of Blaine County, are valid rationales for the County to enact zoning restrictions under its police power. *Dawson Enter., Inc., v. Blaine County*, 98 Idaho 506, 518, 567 P.2d 1257, 1269 (1977). The purpose of the MOD, as set forth in B.C.C. § 9-21-1(B), falls squarely within the recognized powers of the County:

1. To preserve the natural character and aesthetic value of hillsides and mountains in the County by regulating development thereon;

2. To maintain slope and soil stability;

5

3. To prevent scarring of hillsides and mountains made by cuts and fills and/or by access roads to hillside and mountainous areas;

4. To ensure accessibility by emergency vehicles on hillside roads;

5. To prevent unsafe conditions for access, circulation, and road maintenance and unwarranted problems associated therewith in hillside and mountainous areas;

6. To help ensure water quality and prevent deterioration due to sedimentation or inadequately performing septic systems;

7. To regulate site alteration and structural development in the Mountain Overlay District to assure that site alteration and development occurs in the Mountain Overlay District only when no sufficient development exists outside of the District and all other criteria under this Chapter have been met, and to assure that any site alteration and structural development within the District occurs in a manner that minimizes hillside visibility;

8. To carry out the provisions contained in the County Comprehensive Plan; and

9. To protect agricultural lands for productive agriculture while providing for necessary residential and other structural use within the context of productive agriculture.

Applicants contend that Haavik was vested with final authority to determine whether the proposed building sites fell within the boundaries of the MOD. In support of this contention, Applicants rely on B.C.C. § 9-4-4, which provides:

> **INTERPRETATION OF BOUNDARIES:** The Administrator, in consultation with the County Engineer or his/her designated representative, shall have the authority to interpret zoning and overly district boundaries in accordance with this Title. Interpretation by the Administrator may be appealed to the Board according to the procedures and time requirements of Section 9-32-3 of this Title.

We initially observe that the right to appeal the Administrator's interpretation indicates that the Board has reserved the final decision-making authority in this area. More importantly, although Applicants are correct that Title 9 of the Blaine County Code vests the administrator with authority to make a final decision on MOD compliance, subject to review on appeal by the Board, this authority extends only to single-lot applications. Approval of Applicants' subdivision application is not controlled by Title 9; rather, their application is governed by Title 10 of the B.C.C., which regulates subdivision applications.

6

The B.C.C. provides that "[n]o preliminary plat application shall be considered by the Board or Commission until the Administrator makes a *recommendation* with regard to" whether the subdivision proposal complies with "[a]ny chapter of Title 9." B.C.C. §§ 10-5-1; 10-5-1(A)(e) (emphasis added). The non-binding nature of the Administrator's recommendation is reflected in B.C.C. § 10-5-2:

> **THRESHOLD STANDARDS:** No preliminary plat application shall be approved *unless the Board determines* that the application complies with each of the following standards:
>
> A. Administrative Standards: The Administrator's *recommendations* on the standards set out in Section 10-5-1 of this Chapter are acceptable or need modification.

(emphasis added). Further, B.C.C. § 10-5-3 provides that "[n]o preliminary plat application shall be approved *unless the board determines* that the application complies with each of the following standards." (emphasis added). The listed standards include "hillside standards" and specifically provide that "no structure or building envelope shall be located within the Mountain Overlay District except as permitted by Title 9, Chapter 21 of this Code." B.C.C. § 10-5-3(L)(4).

The Board expressly considered and rejected Applicants' claim that Haavik possessed the final decision-making authority, stating:

> The authority delegated to the Administrator is clearly not exclusive. Furthermore, Idaho Code § 67-6504 provides only the Board the authority to approve land subdivisions. For that reason, § 10-5-2(A) was added into the county's code to ensure that the Board retained the final authority to accept or modify any administrator's decision on any Administrative Standard including § 10-5-1(E)1[1] relating to the location of uses in any zoning regulations.

We agree with the Board. The structure of the B.C.C. is such that the Board clearly retained the final decision-making authority to determine whether the proposed areas of disturbance fell within the MOD in cases of subdivision applications. Title 10 of the B.C.C. is consistent with the requirement of I.C. § 67-6504 that the Board shall have final authority to approve or deny subdivision applications.

2. <u>Application of principles of estoppel to the Board's decision is not warranted.</u>

Although the Board is empowered to make the final decision as to whether to approve a subdivision, Applicants nonetheless assert that the Board is estopped from taking a position

---

[1] This section provides: "Lot sizes, uses and the location of uses shall satisfy any zoning regulations and other applicable sections of this Code."

inconsistent with Planning and Zoning staff members' opinions. In support of this argument, Applicants point to the significant sums of money they expended on engineering, avalanche, soils, hydrology and other studies before the Board made its decision. They assert that they would not have incurred these expenses without having first appealed an adverse decision from the Planning and Zoning Administrator. In support of this argument, Applicants direct this Court to our decision in *Boise City v. Blaser*, 98 Idaho 789, 572 P.2d 892 (1977).

In *Blaser*, this Court affirmed the district court's injunction prohibiting the city from interfering with completion of an apartment complex where the landowner had "made substantial expenditures in good faith reliance" on a county zoning permit, which was the equivalent of the city's unconditional permit to build, prior to annexation of the property by the city. *Id.* at 791, 572 P.2d at 894. In reaching this decision, this Court did not apply principles of estoppel; rather, this Court simply applied "the well-known rule" that when a city annexes land and applies a new zoning ordinance, "it must respect existing non-conforming uses." *Id.* at 791-92, 572 P.2d at 894-95.

Applicants have not identified the theory of estoppel upon which they rely, although presumably they rely on principles of either equitable estoppel[2] or quasi-estoppel[3] in support of their claim. Although this Court has yet to categorically refuse to apply the doctrine of estoppel in cases involving application of zoning ordinances, our decisions reflect a reluctance to do so.

In *Intermountain Const., Inc. v. City of Ammon*, 122 Idaho 931, 841 P.2d 1082 (1992), this Court stated:

> [T]his Court held, in *Harrell v. The City of Lewiston*, 95 Idaho 243, 506 P.2d 470 (1973), that a municipality may not be estopped when exercising a legislative and governmental function. In the *Harrell* case it was the enactment of a zoning ordinance. In this case it is the issuance of a building permit pursuant to such an ordinance. Neither the claim of estoppel nor quasi-estoppel constitutes legal grounds for imposing liability on the City of Ammon. I.C. § 6-904(3); *Harrell v. The City of Lewiston, supra.*

---

[2] The elements of equitable estoppel are: (1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth; (2) that the party asserting estoppel did not know or could not discover the truth; (3) that the false representation or concealment was made with the intent that it be relied upon; and (4) that the person to whom the representation was made, or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice. *Williams v. Blakley*, 114 Idaho 323, 325, 757 P.2d 186, 188 (1987).

[3] The doctrine of quasi-estoppel applies when: (1) the offending party took a different position than his or her original position, and (2) either (a) the offending party gained an advantage or caused a disadvantage to the other party; (b) the other party was induced to change positions; or (c) it would be unconscionable to permit the offending party to maintain an inconsistent position from one he or she has already derived a benefit or acquiesced in. *Allen v. Reynolds*, 145 Idaho 807, 812, 186 P.3d 663, 668 (2008) (citations omitted).

*Id.* at 933, 841 P.2d at 1084. This characterization of *Harrell* was an overstatement. Although this Court rejected a claim of entitlement to a building permit based upon estoppel, we did not go so far as to entirely reject the potential application of estoppel. Our holding in *Harrell* was more accurately summarized in *Sprenger, Grubb & Associates, Inc. v. City of Hailey*, 127 Idaho 576, 903 P.2d 741 (1995):

> In *Harrell,* we held that "[i]n the exercise of its police power, which includes the enactment and enforcement of zoning regulations, a municipality acts in a governmental capacity." [95 Idaho] at 248, 506 P.2d at 475. We further stated that "[a]lthough a municipality may be estopped in limited circumstances, the enactment of zoning regulations is a governmental function which is not usually subject to estoppel." *Id.* at 247, 506 P.2d at 474. We determined in *Harrell* that no exigent reasons existed in that case for the application of estoppel without deciding what extraordinary circumstances may merit the application of the doctrine of estoppel in future cases. As in *Harrell*, we again determine that no exigent circumstances exist in this case to apply estoppel against the City in the exercise of its police power.

*Id.* at 583, 903 P.2d at 748.

As in *Harrell* and *Sprenger, Grubb*, we conclude that Applicants have failed to demonstrate the "exigent circumstances" that would warrant application of estoppel in the instant case. Considering first the underlying principles of estoppel, we note that it cannot be said that *the Board* took an inconsistent position by denying the application, as the determination that the proposed sites of disturbance fell within the MOD was the Board's one and only official position. Applicants have not asserted that actions of the Board induced them to change positions. Rather, Applicants rely on the opinions of staff members. Turning to the equities of the situation, we question the reasonableness of Applicants' reliance on the staff members' opinions, given that Bergin's first staff report cautioned that his determination regarding the MOD was "of course subject to further examination by the Board."

Most importantly, we are mindful of the precedential effect of the decision that we are asked to make. Applicants would have this Court conclude that opinions rendered by staff members effectively bind a board of county commissioners if money is expended in reliance on those opinions. If this Court were to apply the doctrine of estoppel in the instant case, then all future boards of commissioners in similar circumstances would be estopped from disagreeing with the opinions of staff members simply because a landowner expended money in reliance on those opinions. The effect would be to strip the boards of their sole statutory authority to

9

approve or deny subdivision applications, as provided by I.C. § 67-6504. Accordingly, although we do not reject the proposition that estoppel may be applied in appropriate circumstances, we do not find this to be an appropriate circumstance.

**B. Applicants have failed to establish that the Board's decision was made upon unlawful procedure.**

Applicants have not asserted that the Board failed to follow proper notice, comment, and hearing procedures before issuing its final written decision on the application. However, Applicants do complain that their right to due process was violated by Commissioner Wright's site visit. In *Comer v. County of Twin Falls*, 130 Idaho 433, 942 P.2d 557 (1997), we held that "before a local zoning body, whether it be the Commission or the Board, views a parcel of property in question, it must provide notice and the opportunity to be present to the parties." *Id.* at 439, 942 P.2d at 563. Therefore, standing alone, Commissioner Wright's action has due process implications.

However, as instructed by the legislature, when conducting judicial review under LLUPA we cannot consider Commissioner Wright's site visit in isolation:

> [T]he courts of the state are directed to consider proceedings as a whole and to evaluate the adequacy of procedures and resultant decisions in light of practical considerations with an emphasis on fundamental fairness and the essentials of reasoned decision-making. *Only those whose challenge to a decision demonstrates actual harm or a violation of fundamental rights, not the mere possibility thereof, shall be entitled to a remedy or reversal of a decision.*

I.C. § 67-6535(c) (emphasis added).

In *Evans v. Bd. of Comm'rs of Cassia County*, 137 Idaho 428, 50 P.3d 443 (2002) this Court applied this statutory provision when evaluating a claim of due process violation based upon a site visit without notice to or the presence of interested parties. This Court held that, when viewed in context of the whole proceedings, the board's site visit to the subject property without notice did not prejudice a substantial right since substantial evidence upon which the board could have independently based its decision was presented at the hearing and contained in the record. *Id.* at 433, 50 P.3d at 448.

Commissioner Wright's visit occurred prior to the first hearing before the Board on December 20, 2004. After the Board referred the application to the Commission for review, the Commission organized a site visit. Applicants were on notice of the full Commission's visit and were provided an opportunity to be present at that viewing. Applicants have not presented any

10

evidence that Commissioner Wright's visit resulted in the discovery of information not contained in the record or that the visit somehow resulted in bias on his part. Applicants have not presented evidence that Wright's earlier visit affected the Commission's unanimous recommendation, tainted the Commission's subsequent site visit, or prejudiced the Board's subsequent unanimous decision. In short, Applicants have not demonstrated that Commissioner Wright's visit to the site months before the decision of the Board resulted in actual harm; rather, Applicants allege the mere possibility thereof.

Applicants have not pointed out any meaningful flaws in the remainder of the procedure followed. A substantial notice and comment period was provided. Numerous public hearings were held at which Applicants were provided the opportunity to present their case. Applicants were accompanied and represented by legal counsel at some of these public hearings. Moreover, it is evident that the Board gave serious consideration to the application by requiring the extra step of Commission review, a step that is not normally required for short plat applications. In compliance with I.C. § 67-6535(b), the Board issued a detailed written opinion explaining their rationale for the denial and the applicability of the facts to the relevant criteria and standards.

Applicants were entitled to a fair administrative decision-making process, not a perfect one. I.C. § 67-6535(c). As we did in *Evans*, we conclude that the Applicants have not demonstrated that the Board's decision was reached upon unlawful procedure that affected substantial rights.

**C. Applicants have failed to show that the Board's action was not based upon substantial and competent evidence or that it was arbitrary, capricious, or an abuse of discretion**.

Applicants assert that the decision of the Board should be overturned because it was arbitrary and capricious. This assertion rests on the contention that the Board has interpreted and applied the MOD ordinance inconsistently with regard to projects with allegedly similar topography as the NoKaOi subdivision. Asserting that the Board has applied the ordinance inconsistently and directing our attention to the differing interpretations and comments made in the Board's proceedings, Applicants argue that the ordinance is therefore void for vagueness and incapable of being applied in any manner that is not arbitrary and capricious.

1. The MOD ordinance is not void for vagueness and substantial competent evidence supports the Board's determination that the proposed areas of disturbance for Lots 1 and 2 fell within the MOD.

A statute is void for vagueness if persons of ordinary intelligence must guess at its meaning. *Cowan*, 143 Idaho at 514, 148 P.3d at 1260. Our analysis of the ordinance begins with the literal language of the enactment. *Lane Ranch P'ship*, 145 Idaho at 89, 175 P.3d at 778. Where the language is unambiguous, the clearly expressed intent must be given effect, and there is no occasion for this Court to construe the language. *Id*.

The ordinance regarding MOD demarcation is found in B.C.C. § 9-21-2(D), which provides:

> The regulations of this Overlay District, which will not be designated on the Official Zoning Map, shall apply to areas of land within the County where:
>
> 1. The hillside slope exceeds twenty five percent (25%), including all areas that are higher than the lowest hillside slopes which exceed twenty five percent (25%); or
>
> 2. In the Scenic Corridor 1 (SC1) where the hillside slope exceeds fifteen percent (15%), including all areas that are higher than the lowest hillside which exceed fifteen percent (15%).

B.C.C. § 9-21-2(F) further provides:

> "Areas higher than the lowest hillside slopes" under subsections D1 and D2 of this Section shall include all areas and geographic features (regardless of grade of slope), including, without limitation, all ridges, saddles, knolls, and pockets or islands of land, between and including the summit of the hillside and the lowest hillside slopes exceeding twenty five percent (25%) for subsection D1 of this Section or fifteen percent (15%) for subsection D2 of this Section.

Interpretation of a county zoning ordinance or statute is a question of law over which this Court exercises free review. *Lane Ranch P'ship*, 145 Idaho at 89, 175 P.3d at 778. However, "[t]here is a strong presumption that the actions of the Board of Commissioners, where it has interpreted and applied its own zoning ordinances, are valid." *Evans v. Teton County*, 139 Idaho 71, 74, 73 P.3d 84, 87 (2003) (citing *Evans*, 137 Idaho at 431, 50 P.3d at 446); *see also Lane Ranch P'ship*, 145 Idaho at 89, 175 P.3d at 778; *Cowan*, 143 Idaho at 515, 148 P.3d at 1261; *Sanders Orchard v. Gem County ex rel. Bd. of County Comm'rs*, 137 Idaho 695, 698, 52 P.3d 840, 843 (2002). Furthermore, greater tolerance is permitted when addressing a civil statute as opposed to a criminal statute under the void for vagueness doctrine. *Cowan*, 143 Idaho at 513-14, 148 P.3d at 1259-60 (citing *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 716, 791 P.2d 1285, 1295 (1990)).

Bergin outlined three potential approaches to determining the MOD boundaries in his second staff report. The first approach, and the one adopted by Bergin in his first staff report, excluded from the MOD areas of the hillside considered a "bench" as defined in the Blaine County Code.[4] The second option applied the MOD to any point on the subject property "between the summit and the foot" of the lowest hillside slope exceeding 15 or 25% but excluded those portions of property above the lowest hillside slope that did not also exceed 15 to 25%. The third approach considered all areas on the subject property higher in elevation than the lowest hillside slope exceeding 15 or 25% to be within the MOD. The Commission adopted the third approach, which was also the approach accepted by the Board.

Despite the fact that Bergin and Haavik believed that NoKaOi subdivision did not fall within the MOD because it was on a flat bench area above the first slope, the Board found that the MOD ordinances did not provide such an exception. The Board stated: "The applicant's argument concerning a "bench" – even if the Board were to accept it – would not change the finding as to the MOD because even benches between the summit and the lowest hillside slopes exceeding fifteen percent (15%)(SC1) or twenty five percent (25%) would be within the MOD." We agree with the Board's conclusion.

We first observe that the term "bench," although defined in B.C.C. § 9-2-1, does not appear in the MOD ordinance, much less as an exception to the general definition of the MOD. To the contrary, the Board's interpretation is supported by the statement of intended scope of the ordinance, found in B.C.C. § 9-21-1(A), which states:

> All areas of land, regardless of geographic or geological features, between and including the summit of the hillside and lowest hillside slopes exceeding fifteen percent (15%) or twenty five percent (25%) for these respective areas are included

---

[4] The following applicable definitions are found in B.C.C. § 9-2-1:

**BENCH:** A level step created by the former flood deposits of a river.

**HILLSIDE**: A part of a hill between and including the summit and the foot and includes, but is not limited to, such landforms as ridges, saddles, and knolls.

> **Knoll**: A small round hill or mound.
> **Ridge**: A sharp, elongated crest or linear series of crests.
> **Saddle**: A ridge connecting two (2) higher elevations.
> **Summit**: The highest part, top or peak of a hillside.
> **Foot**: The lowest part of a hillside where the grade of slope increases from horizontal or near horizontal; the bottom or base of a hillside.

**SLOPE**: An inclined ground surface, the inclination of which is expressed as a ratio of horizontal distance to vertical distance. Percent slope is calculated by multiplying this ration (rise/run) by one hundred (100). Slope is measured from the base of the hill.

within the Mountain Overlay District. The District is not intended to create a patchwork that excludes saddles, ridges, knolls, summits, or pockets or islands of flatter land between and including the applicable lowest hillside slopes and the summit of the hillside, but rather is intended to include those areas.

Although Applicants couch their challenge in "void for vagueness" terms, Applicants' argument does not address the language of the MOD. Rather, Applicants direct this Court to comments by Commission and Board members discussing their difficulty in interpreting and applying the ordinance. Considering only the language of the ordinance, we find that the language is not vague. Rather, the ordinance unambiguously provides that areas located above the lowest 25% slope fall within the MOD as do all areas that are higher than the lowest hillside slopes exceeding 15% in SC1.

This leads us to consider the evidence supporting the Board's determination that the NoKaOi subdivision fell within the MOD. The Commission determined that the elevation of the lowest hillside slope exceeding 25% was 5,740 feet. A contour line was then drawn across the topographic map of the subject property at 5,740 feet, above which the Commission determined any "areas of disturbance" were within the MOD. In reaching its decision, the Commission also requested that Applicants stake the site in preparation for the Commission's site visit. The Commission found that proposed lots 1 and 2 of the NoKaOi subdivision had "areas of disturbance" entirely within the MOD. Additionally, Applicants were asked to place storey poles in the centroids of the areas of disturbance. The Commission found that the storey poles placed in lots 1 and 2 were visible from State Highway 75 and thus in violation of the ordinance regulating development within SC1 on areas higher than the lowest hillside slopes exceeding 15% percent. Because the Commission found that Lots 1 and 2 were not in compliance under both alternatives of the MOD ordinance, it recommended that the Board deny the application. After holding two additional public hearings on the matter, the Board adopted the Commission's recommendation and denied the application.

As noted in our discussion of the governing standard of review, we defer to the Board's findings of fact unless they are clearly erroneous. So long as the Board's "findings, conclusions and decision are sufficiently detailed to demonstrate that it considered applicable standards and reached a reasoned decision, we [will] find that the decision was not arbitrary and capricious and was based on substantial evidence in the record." *Brett v. Eleventh St. Dockowner's Ass'n, Inc.*, 141 Idaho 517, 523, 112 P.3d 805, 811 (2005); *see also* I.C. § 67-6535(a-b). Applicants have not

14

established that it was clear error for the Board to find that the areas of disturbance in lots one and two sat above a 25% slope or that the 5,740-foot contour line demarcated the top of that first slope. This Court has independently reviewed the record as considered by the Board and we conclude that the Board's findings of fact are supported by substantial and competent evidence.

    2. <u>The Board's decision to apply the MOD was not arbitrary or capricious nor did the decision violate Applicants' equal protection rights.</u>

Applicants argue that the Board's determination was arbitrary and capricious, and violated their equal protection rights, asserting that the Board approved development of other properties with similar topography to NoKaOi.

At the outset, we note the difficulty of addressing Applicants' equal protection argument, as Applicants did not favor us with citation to legal authority relating to their equal protection claim, although their opening brief provided argument on this subject. However, we have previously determined that argument alone is sufficient for us to address an issue advanced on appeal. *Blaine County Title Associates v. One Hundred Bldg. Corp., Inc.*, 138 Idaho 517, 520, 66 P.3d 221, 224 (2002). Applicants do not suggest that the MOD ordinance is invalid; rather, their complaint is that the ordinance has not been applied in a consistent fashion.

Applicants have not asserted that the Board's action was "a deliberate and intentional plan of discrimination against [them], based on some unjustifiable or arbitrary classification, such as race, sex, or religion." *State v. Larsen*, 135 Idaho 754, 758, 24 P.3d 702, 706 (2001) (citing *State v. Edmonson*, 113 Idaho 230, 235, 743 P.2d 459, 464 (1987)). Rather, to the extent that Applicants have asserted an equal protection claim, it appears that they assert that they are a "class of one." As such, Applicants need only allege and prove that they have intentionally been singled out and treated differently based on a distinction that fails the rational basis test. *See e.g. City of Coeur d'Alene v. Simpson*, 142 Idaho 839, 853, 136 P.3d 310, 324 (2006) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564-65 (2000); *Anderson v. Spalding*, 137 Idaho 509, 514, 50 P.3d 1004, 1009 (2002)). This leads us to consider Applicants' claim that the Board's decision was arbitrary and capricious, based upon different treatment of others.

The Board's written decision explained at length how the instant decision was consistent with its previous MOD determinations for other properties and subdivisions including: the Rollins property in the East Fork subdivision (which sits immediately south of the proposed NoKaOi subdivision), the Bluegrouse Ridge subdivision, the Timberview Terrace subdivision,

the Griffin Ranch subdivision, the Golden Eagle subdivision, the Dip Creek subdivision, the Lee's Gulch subdivision, the Dilley parcel, and a remodel of property on Eagle Creek Road. We are unable to conclude that the Board's decision on the NoKaOi subdivision application was arbitrary and capricious or an abuse of discretion. The administrative record clearly indicated that the Board carefully considered their application and issued a thorough, detailed discussion of why it declined to find that lots 1 and 2 were outside the MOD. Applicants have failed to persuade us that the Board erred in a fashion governed by I.C. § 67-5279(3).

**D.  Neither party is entitled to attorney fees or costs.**

Both parties have requested attorney fees on appeal pursuant to I.C. § 12-117. Applicants are not entitled to attorney fees under this provision because they are neither the prevailing party on appeal nor below. *Rincover v. State, Dep't of Fin., Sec. Bureau*, 132 Idaho 547, 550-51, 976 P.2d 473, 476-77 (1999). The district court declined to award attorney fees to the County because it did not find that Applicants' petition for judicial review was brought without a reasonable basis in fact or law. Although we have not accepted the positions advanced by Applicants on appeal, we hold that this appeal was not pursued frivolously or unreasonably. Thus, we decline to award attorney fees to the County on appeal. *See e.g. Ada County Highway Dist. v. Total Success Inv., LLC*, 145 Idaho 360, 372-73, 179 P.3d 323, 335-36 (2008).

## IV. CONCLUSION

We conclude that the Board had exclusive authority to determine whether the proposed subdivision fell within the MOD and that it would be inappropriate to estop the Board from enforcing the MOD ordinance. We find that Applicants' due process rights were not violated by reason of Commissioner Wright's site visit. We find that the MOD ordinance is not unconstitutionally vague and that substantial competent evidence supported the Board's determination that the subdivision would violate the MOD ordinance. We find that the Board's decision was not arbitrary and capricious and did not violate Applicants' equal protection rights. We therefore affirm the decision of the district court. Costs to Respondent.

Chief Justice EISMANN and Justices BURDICK, J. JONES and W. JONES **CONCUR**.