IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 35201

JOHN NOBLE, an individual, and CEDAR )
RIDGE HOMES, INC., an Idaho corporation, )
                                                       )

      Plaintiffs-Appellants, )

v.                                   )           Boise, January 2010 Term

KOOTENAI    COUNTY,    a    political )           2010 Opinion No. 39
subdivision of the State of Idaho acting )
through the KOOTENAI COUNTY BOARD )           Filed: April 1, 2010
OF COMMISSIONERS, ELMER R. (RICK) )
CURRIE,  W.  TODD  TONDEE,  and )           Stephen W. Kenyon, Clerk
RICHARD A. PIAZZA, Commissioners in )
their official capacities, )

      Defendants-Respondents. )

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John P. Luster, District Judge.

District court decision affirming Kootenai County Board of Commissioners, affirmed.

Lukins & Annis, PS, Coeur d'Alene, for appellant. Mischelle R. Fulgham argued.

Kootenai County Prosecutor's Office, Coeur d'Alene, for respondent. Patrick M. Braden argued.

_____

BURDICK, Justice

      Appellants, John Noble and Cedar Ridge Homes, Inc. (collectively "Applicants"), appeal the district court's decision affirming the Kootenai County Board of Commissioners' (the Board) denial of Applicants' application for a residential subdivision. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

      Applicants own approximately 152 acres of real property, zoned Rural, in Kootenai County, Idaho, and filed an application for a major subdivision on February 8, 2006. The proposed subdivision was to contain 20 lots, ranging between 5 and 10 acres per lot, and a

dedicated no-build area in the 70 acre area known as "the meadow." The meadow is known to be a non-jurisdictional[1] wetland subject to frequent flooding.

After an initial public hearing on Applicants' proposed subdivision on January 18, 2007, the Hearing Examiner recommended approval of the application, subject to conditions, on January 31, 2007. The Board then conducted a second public hearing on April 12, 2007, and visited the site of the proposed subdivision on May 22, 2007. On June 21, 2007, the Board issued a written order denying the application for subdivision, based upon Applicants' failure to provide "Base Flood Elevation" information with respect to the proposed subdivision. Applicants filed a timely Petition for Judicial Review of the Board's decision on July 19, 2007.

Following a hearing on January 3, 2008, the district court entered its Memorandum Opinion and Order in Re: Petition for Judicial Review on February 7, 2008, affirming the Board's denial of the subdivision application. On April 7, 2008, Applicants filed a timely Notice of Appeal with this Court.

## II. ISSUES ON APPEAL

1. Whether the Board based its denial of Applicants' subdivision application upon substantial and competent evidence.

2. Whether the Board's visit to the site of the proposed subdivision was conducted in violation of Idaho's open meeting laws.

3. Whether Applicants' substantial rights were prejudiced by the Board's rejection of Applicants' subdivision application.

4. Whether Applicants are entitled to attorney fees on appeal.

## III. STANDARD OF REVIEW

In *Terrazas v. Blaine County ex. rel. Board of Commissioners*, this Court summarized the standard of review this Court applies when considering the denial of a permit, or its functional equivalent, by a county board of commissioners:

> A county board of commissioners is not a state agency for purposes of the application of [the Idaho Administrative Procedure Act] in its totality. In order to obtain judicial review under [the Local Land Use Planning Act], I.C. §§ 67-6501 *et seq.*, there must be a statute granting the right of judicial review. Idaho Code § 67-6519(4) provides that "[a]n applicant denied a permit or aggrieved by a decision" may seek judicial review after exhausting all remedies available under

---

[1] "Non-jurisdictional" in this context means that the wetlands do not discharge into the waters of the United States and are therefore not subject to the federal Clean Water Act. This determination was made by the Army Corps of Engineers.

2

county ordinances. The decision regarding a subdivision application is a decision granting a permit, I.C. § 67-6513, and is therefore subject to judicial review.

147 Idaho 193, 197, 207 P.3d 169, 173 (2009) (some internal citations omitted) (third alteration in the original).

As this Court stated in *In re Idaho Department of Water Resources Amended Final Order Creating Water District No. 170*:

> In an appeal from a district court, where the court was acting in its appellate capacity under [the Idaho Administrative Procedure Act], the Supreme Court reviews the agency record independently of the district court's decision." *Spencer v. Kootenai County*, 145 Idaho 448, 452, 180 P.3d 487, 491 (2008). If the sufficiency of factual findings was challenged before the district court and subsequently challenged in this Court, we review the agency record de novo to see if those factual findings are supported by substantial and competent evidence. Where the agency record provides substantial and competent evidence supporting the agency's findings of fact, and the agency conclusions of law follow from those facts, and the district court affirmed the agency decision, we affirm the district court's decision as a matter of procedure. *See Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008).

148 Idaho 200, __, 220 P.3d 318, 322-23 (2009).

"Although interpretation of an ordinance is a question of law over which this Court exercises free review, 'there is a strong presumption of favoring the validity of the actions of zoning boards, which includes the application and interpretation of their own zoning ordinances.'" *Terrazas*, 147 Idaho at 197, 207 P.3d at 173 (internal citation omitted) (quoting *Payette River Prop. Owners Ass'n v. Bd. of Comm'rs of Valley County*, 132 Idaho 551, 554, 976 P.2d 477, 480 (1999)).

### IV. ANALYSIS

This Court shall not overrule the decision of the Board unless that decision: "(a) violated statutory or constitutional provisions; (b) exceeded the Board's statutory authority; (c) was made upon unlawful procedure; (d) was not supported by substantial evidence in the record; or (e) was arbitrary, capricious, or an abuse of discretion." *Terrazas*, 147 Idaho at 197-98, 207 P.3d at 173-74. Under the appellate standards provided in I.C. § 67-5279(4), Applicants must also demonstrate that the Board's decision prejudiced one or more of their substantial rights. *Id.* at 198, 207 P.3d at 174.

**A. The Board did not err in finding that Applicants had failed to provide the Board with adequate information to determine compliance with the Subdivision Ordinance, and in denying the subdivision application on these grounds.**

In considering Applicants' subdivision application, the Board was bound to follow Kootenai County Subdivision Ordinance No. 344 (Subdivision Ordinance). Subdivision Ordinance § 2.01(C)(1)(k) provides a list of what the hearing body (in this case the Board) must find in order for the hearing body to recommend approval of the subdivision application. Section 2.01(C)(1)(k)(1) requires that the subdivision applicant must provide "adequate information to determine compliance with the requirements." The Subdivision Ordinance further requires that, in order to recommend approval of a proposed subdivision, the hearing body must, *inter alia*, find that the proposed subdivision will meet the County Flood Ordinances without variance.

In a typical case, the Hearing Examiner makes a recommendation under § 2.01(C)(1)(k) either recommending that the Board approve the subdivision application, if the requirements are met, or recommending that the Board deny the application. This case is atypical in that the initial hearing was held by the Hearing Examiner, who recommended approval of the subdivision application, but upon review, under § 2.01(C)(1)(l), the Board opted to schedule its own hearing to allow for the submission of additional information. Final decisions on subdivision applications are made by the Board, and when the Board acts as the hearing body it shall draw its own reasonable conclusions regarding the application's compliance with the required findings under § 2.01(C)(1)(k) of the Subdivision Ordinance, and make its final decision on the application accordingly.

In the Conclusions of Law section of the Board's Decision, the Board found that:

The Applicant has failed to meet the required burden of proof in providing adequate information to determine compliance with Kootenai County Subdivision Ordinance No. 344 [Subdivision Ordinance]. The proposed subdivision design does not adequately address existing site constraints and/or special hazards.

It is unclear whether the plan and the proposed lots/development features are capable of meeting the elevation requirements of the Flood Damage Prevention Ordinance because base flood elevation [(BFE)[2]] information was not provided.

Without the identification of [BFE] information, the [Board is] unable to positively determine whether or not the proposed lots will be of reasonable utility

---

[2] Base Flood Elevation is defined by the Flood Ordinance as the:

Height of Floodwaters during discharge of the base flood as indicated on the Flood Insurance Rate Maps, or as designated by FEMA or another authoritative source, or the height of floodwaters during the largest flood of record, whichever is higher. The base flood is measured in feet using the National Geodetic Vertical Datum.

Base Flood, in turn, is defined as "(Generally referred to as the 100-year flood.) This is the flood having a one percent chance of being equaled in any given year. Designation on maps always includes the letters A or V."

and livability, capable of being built upon without imposing an unreasonable burden on future owners.

Without the identification of [BFE] information, the [Board is] unable to positively determine whether or not all of the proposed drain field locations will be of reasonable operational utility to the future owners, and will not negatively effect [sic] area water resources.

Without the identification of [BFE] information, the [Board is] unable to positively determine whether or not the proposed "meadow" roadway location will be of reasonable operational utility to the future owners.

Without the identification of [BFE] information, the [Board is] unable to positively determine whether or not the proposed road design will require mitigation of any negative environmental impacts to the flooding hazard area, or to positively determine how its design or construction is the minimum necessary at this site. Further, it is unclear because of the road's location within the wetlands/flood area, whether the road is capable of meeting the required construction standards.

These findings clearly demonstrate that the Board, in its discretion, found that it had been provided with insufficient information pertaining to flooding on the site of the proposed subdivision, and, as such, did not find that Applicants had demonstrated compliance with multiple requirements of § 2.01(C)(1)(k) of the Subdivision Ordinance.

Applicants contend that they were not required to provide the Board with BFE information - as the site of the proposed subdivision, including the no-build meadow area - was not properly classified as an Area of Special Flooding Hazard (ASFH) under Kootenai County Flood Damage Prevention Ordinance No. 311 (Flood Ordinance). Applicants further argue that, in the event that the Board was concerned that the site was an ASFH, the Board was required to have the Administrator (as defined in the Flood Ordinance) determine the boundaries of the ASFH.

By failing to provide the Board with BFE information for the site of the proposed subdivision, Applicants failed to meet their obligations under the Flood Ordinance. In failing to demonstrate compliance with the Flood Ordinance, Applicants likewise failed to meet their burden under the Subdivision Ordinance.

Section 3.2(F) of the Flood Ordinance, pertaining to subdivisions, requires that "[w]here base flood elevation data has not been provided or is not available from another authoritative source, it shall be generated by the developer's engineer for projects which contain at least 5 lots or 5 acres (whichever is less)." Here, the BFE information was not available from another

5

authoritative source, and was, therefore, to be generated by Applicants' engineer for the project. By failing to have Applicants' engineer generate this information Applicants failed to demonstrate compliance with the Flood Ordinance, which is one of the requirements under the Subdivision Ordinance.

Applicants' argument that they had no duty to provide BFE data unless the property was within an ASFH is utterly inconsistent with the Flood Ordinance. Under the terms of the Flood Ordinance, an ASFH is defined in reference to BFE data. Section 2.0 of the Flood Ordinance provides the relevant definitions. An ASFH is defined as "the 100-year floodplain subject to a one-percent or greater chance of flooding any given year." A "base flood" is the "flood having a one percent chance of being equaled or exceeded in any given year." Under these definitions, it is impossible to determine the existence of an ASFH without reference to BFE data. This is obviously why developers are required to provide BFE data. The developer must provide BFE data from an "authoritative source" and, in the absence of such a source, the developer's engineer must generate the data. As they failed to provide BFE data, Applicants failed to provide "sufficient information to conclusively demonstrate compliance" with the Flood Ordinance. Under § 2.01(C)(1)(k)(4) of the Subdivision Ordinance, a subdivision application may not be approved if Applicants fail to meet the burden of demonstrating that all applicable County ordinances (such as the Flood Ordinance) will be met without variance. Therefore, the Board properly denied the application.

**B. The Board's visit to the site of the proposed subdivision was conducted in violation of Idaho's open meeting laws.**

Applicants allege that the Board conducted its visit to the site of the proposed subdivision in a manner that violated Idaho's open meeting laws, I.C. § 67-2340, *et seq*.,[3] and was a violation of Applicants' due process rights. Idaho Code § 67-2342(1) requires that "all meetings of a governing body of a public agency shall be open to the public and all persons shall be permitted to attend any meeting except as otherwise provided by this act." Under I.C. § 67-2341, the Board is a governing body of a public agency for purposes of I.C. § 67-2342(1). Idaho Code §

---

[3] Applicants allege that the Board also acted in violation of the Idaho Administrative Procedure Act, specifically I.C. § 67-5242, in not allowing Applicants to communicate with the Board during the site visit. However, the Board is not an agency, as defined by I.C. § 67-5201. *See Terrazas v. Blaine County ex. rel. Bd. of Comm'rs*, 147 Idaho 193, 197, 207 P.3d 169, 173 (2009). Idaho Code § 67-5242 applies to "contested cases," and the I.C. § 67-5240 definition of "contested case" begins "[a] proceeding by an *agency*"; therefore, the requirements mandated by I.C. § 67-5242 for contested cases are inapplicable.

6

31-710 governs how meetings shall be conducted by county boards of commissioners, and subsection four provides that "[a]ll meetings of the board must be public."

At the conclusion of its hearing on the proposed subdivision on April 12, 2007, the Board chose to leave the hearing open for two purposes: (1) to receive additional information from Applicants regarding the location of drain fields, no-build zones, and building envelopes in the proposed subdivision; and (2) to allow the Board's observations made during the site visit to be included within the record of proceedings. The manner in which the site visit was conducted is the source of the controversy. Proper notice of the public hearing/site visit was provided, and this has not been contested by Applicants.

Applicants allege that after providing notice to the public of when the site visit would occur, the Board acted in bad faith by intentionally avoiding a group that was gathered near the entrance to the site location, thereby precluding the interested parties from actually attending. According to the site visit transcript, when the site visit was nearly concluded an unidentified party (either a Commissioner or staff member) asked whether the Board should go and park by the group of interested parties, at which point two members of the staff, John Cafferty and Mark Mussman, counseled against stopping as the group would likely attempt to question the Board. An affidavit prepared by Applicants' engineer, Russell Helgeson, states that after the Board had viewed the site the Board's van parked up the road from the group. Soon after the van had parked, Mussman jogged over to the group and stated that the Board did not wish to be approached or talked to.

Applicants cite this Court's opinion in *Comer v. County of Twin Falls*, 130 Idaho 433, 942 P.2d 557 (1997), in support of their argument that the Board violated Applicants' procedural due process rights in conducting the site visit as they did. In *Comer* this Court stated that the appellants' procedural due process rights had been violated "when [the Board] viewed the property without notice, and without giving the parties or their representatives the right to be present." *Id*. at 440, 942 P.2d at 564. We noted that "[b]ecause none of the parties [were] present during the viewing, and because no record was made of the viewing, the parties have no way of knowing if the correct parcels of property were examined by members of the Board." *Id.* at 439, 942 P.2d at 563. Here, Applicants were given notice of the site visit, Applicants' representatives saw the Board arrive on site, and a record was made of the site visit. Clearly the site visit here was more procedurally sound than that which occurred in *Comer*; nevertheless, it

7

cannot be said that the procedure followed here alleviated all of the concerns expressed in *Comer*. In the case at hand, we know that the correct parcels of property were examined, as the Applicants' representatives saw the Board arrive onsite; however, the transcript of the site visit demonstrates that the Board was uncertain as to what different colored flags designated, and in some instances disagreed as to the color of flag they were looking at. These are issues that Applicants' engineers could certainly have assisted the Board with.

It cannot be said that the Board made a good faith effort to conduct its site visit in a manner that was open to the public in any meaningful way. Idaho's open meeting laws, I.C. § 67-2340, *et seq*., are designed to allow the public to be present during agency hearings. At the very least this means that the public must be permitted to get close enough to the hearing body to hear what is being said. It is clear that the Board did not wish for the public to participate in the site viewing, as far as providing comments or presenting evidence, and in attempting to avoid this the Board precluded the public from even listening to the hearing.

Idaho's open meeting laws do not require an agency conducting a meeting to allow comments from the public. However, in order to comply with the spirit of the open meeting laws, details should be provided to the interested parties regarding the type of meeting being conducted, and these details should be provided prior that hearing being conducted. Details as to whether the meeting is being held in order to conduct additional evidence gathering, or merely to confirm what an agency has already decided based upon the evidence in the record. Details as to whether the hearing body will be accepting public comment, and generally, what the procedures for that meeting shall be. There are clear reasons why it may be preferable not to allow comments or the submission of evidence during a site visit, but the interested public must be provided with notice of the scope of the visit and, at a minimum, must be given the opportunity to accompany the hearing body, close enough to hear what is being said.

We hold that, in making it practically impossible for the public to be present while the visit was conducted, this site visit was held in violation of Idaho's open meeting laws.

**C. Applicants' substantial rights were not prejudiced by the Board's rejection of Applicants' subdivision application.**

In accordance with I.C. § 67-5279, even where the Board has reached its decision upon unlawful procedure, the Board's decision shall still be affirmed unless Applicants' substantial rights have been prejudiced by that decision. Although, generally, the right to develop one's property is a substantial right, *Terrazas v. Blaine County ex. rel. Board of Commissioners*, 147

8

Idaho 193, 198, 207 P.3d 169, 174 (2009), it cannot be said that Applicants' right to develop their property has been prejudiced by this decision. The Board's denial of the subdivision application was not a final denial, and Applicants were provided with details on the information they could provide to the Board on a subsequent subdivision application in order to gain approval. Although subsequent approval is not guaranteed, the possibility is sufficient so that it cannot be said that Applicants' substantial rights have been prejudiced at this point. In addition, Applicants have no right to approval of a subdivision application that does not meet the requirements of the governing ordinances.

**D. Applicants are not entitled to attorney fees on appeal.**

Applicants have requested attorney fees under I.C. § 12-117 and Idaho Appellate Rules 40 and 41. As Applicants are not the prevailing party, no attorney fees shall be granted.

## V. CONCLUSION

We affirm the district court decision affirming the Board's decision. The Board had substantial and competent evidence supporting its determination that Applicants' had failed to demonstrate that their subdivision complied with the requirements of the Subdivision Ordinance. Although the Board erred in conducting its site visit in violation of Idaho's open meeting laws, it cannot be said that this procedural error prejudiced a substantial right of Applicants. No costs awarded to either party.

Chief Justice EISMANN and Justices W. JONES, HORTON and TROUT, Pro Tem, **CONCUR.**

9